# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SHERRILYN KENYON, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO.:_____ |
| CASSANDRA CLARE, a/k/a JUDITH | ) | JUDGE: _____ |
| RUMELT, a/k/a JUDITH LEWIS | ) | |
| | ) | JURY DEMAND |
| and | ) | |
| | ) | |
| DOES 1 through 50, inclusive, | ) | |
| | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## COMPLAINT

For her Complaint against DEFENDANTS CASSANDRA CLARE a/k/a JUDITH RUMELT, a/k/a JUDITH LEWIS, a/k/a, an individual ("CLARE"), and DOES 1 through 50, inclusive ("DOES"), (collectively, "DEFENDANTS"), PLAINTIFF SHERRILYN KENYON ("PLAINTIFF") hereby states as follows:

### PARTIES

1. PLAINTIFF is a resident and citizen of the State of Tennessee who resides in Franklin, Tennessee. PLAINTIFF is the author and holds a beneficial interest sufficient for statutory standing under 17 U.S.C. § 501(b) in and to "The Dark Hunter Series" literary series as defined below in paragraph 9. PLAINTIFF has statutory standing to institute this action for Trademark infringement and False Advertising pursuant to 15 U.S.C. § 1114.

1

2.      CLARE is a resident and citizen of Amherst, Massachusetts and is the author of "The Mortal Instruments" series of books (the "Shadowhunter Series").

3.      The true names and capacities of DEFENDANTS DOES 1 through 50, inclusive, are presently unknown to PLAINTIFF, who therefore sues these DEFENDANTS by such fictitious names. Each DEFENDANT designated as a DOE is in some manner responsible for the occurrences alleged herein and the injuries and damages suffered by PLAINTIFF were proximately caused by the conduct of such DOE DEFENDANTS. PLAINTIFF will seek leave of Court to amend this Complaint to allege the true names and capacities of each DOE DEFENDANT, together with such allegations as may be appropriate, when their names have been ascertained.

4.      Each act and omission alleged herein on the part of any one DEFENDANT was done with the approval and consent and was ratified by each of the remaining DEFENDANTS. At all times material to this Complaint, each DEFENDANT may be held liable for the infringing acts committed by another DEFENDANT to the extent that each DEFENDANT had the right and ability to control the infringing activities alleged herein and had a direct financial interest in such activities, regardless of whether each DEFENDANT had intent or knowledge of the infringement alleged herein.

5.      At all relevant times each DEFENDANT who knowingly induced, caused, or materially contributed to the infringement alleged herein by another DEFENDANT, but who may not have committed or participated in the infringing acts himself or itself, may be held liable as a contributory infringer as each such DEFENDANT had knowledge, or reason to know, of the infringement.

2

## JURISDICTION AND VENUE

6.      This is an action for trademark infringement, copyright infringement, unfair competition, false advertising, and trade dress infringement arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), 101 *et. seq*, and the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and 15 U.S.C. § 1121.

7.      This Court has personal jurisdiction over the DEFENDANTS because, among other things, DEFENDANTS conduct and solicit business in this jurisdiction and distribute the infringing products that are the subject matter of this Complaint in this jurisdiction.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a) as a substantial part of the events or omissions giving rise to the claim occurred in this district.   The DEFENDANTS have all purposefully availed themselves of the privilege of acting in the district or causing a consequence in the district, the cause of action arises from the DEFENDANTS' activities in this district, and the acts of the DEFENDANTS or consequences caused by the DEFENDANTS have a substantial enough connection with the district to make the exercise of jurisdiction over the DEFENDANTS consistent with the principles of due process.

## FACTUAL ALLEGATIONS

9.      PLAINTIFF is the author and beneficial owner of all exclusive rights under copyright to the Dark-Hunter Series of novels, short stories, and other copyrighted materials, dating from 1998.  The series includes, among others, works written by PLAINTIFF and published as part of the "Dark-Hunter", "Hellchasers", "Hell-Hunter", "Were-Hunter", "Dream-Hunter", "Dark-Hunter: Deadman's Cross", "Hunter Legends", "Dark-Hunter: Chronicles of Nick" and "Dark-Hunter: Lords of Avalon" series and the works listed in Exhibit 1, referred to collectively herein as the "Dark-Hunter Series."

3

10.     PLAINTIFF is owner of certain trademark rights in the word-mark "Dark-Hunter", "Dream-Hunter", and "Were-Hunter" without any restriction to the particular font style, size, or character, including without limitation those federal registrations contained in Exhibit 2, collectively referred to as the "Dark-Hunter Marks."

11.     The Dark-Hunter Series of science-fiction/fantasy novels is a #1 New York Times and international bestselling series.  The Dark-Hunter Series follows an immortal cadre of warriors who fight to protect mankind from creatures and demons who prey on humans.  The author, Plaintiff Sherrilyn Kenyon, has a global fan base for the Dark-Hunter Series.  This community of fans immerse themselves in the detailed fictional universe contained within the world of the Dark-Hunter Series.  The fans create their own videos, discuss the books on social media, collect memorabilia, attend conventions, dress in character inspired costumes, and are known to complain loudly about any inconsistencies they perceive within the fictional universe.  The perceived integrity of the Dark-Hunter Series and the realm and fictional facts created by PLAINTIFF in the Dark-Hunter Series portrayed is, therefore, critical to Ms. Kenyon's success and the continued commerce in her Dark-Hunter Series.  Kenyon has also produced several videos based upon the Dark-Hunter Series, all of which are collectively referred to as "Dark-Hunter Videos".

12.     In 2006, PLAINTIFF was alerted by some of her distressed fans of the potential publication by CLARE of a work that incorporated PLAINTIFF's Dark-Hunter Marks. PLAINTIFF demanded that the term "darkhunter" and the Dark-Hunter Marks be removed from CLARE's work.  CLARE removed the term "darkhunter" and the Dark-Hunter Marks from her work, substituting instead the term "shadowhunters" for her protagonist, but removing any reference to "hunter" (whether "shadow" or "dark") from the title; the book was published in 2007 as "The Mortal Instruments, City of Bones."   Despite PLAINTIFF's continuing protests and

4

continuous assurances from CLARE and CLARE's publisher that she/they would not expand the use of the "shadowhunters" term or adopt it as a trademark, CLARE has persisted over time in expanding her use of the term "shadowhunters" from a mere description of her protagonists, first to a tag line on the cover of her works and eventually to a complete rebranding of her works so as to be confusingly similar to the Dark Hunter Series. CLARE's works are now listed on CLARE's website, "shadowhunters.com" under the category of "Cassandra Clare's Shadowhunters" and include the series of "Mortal Instruments" novels along with "The Infernal Devices," "The Dark Artifices," "Tales from the Shadowhunter Academy," "The Bane Chronicles," "The Last Hours," and "The Shadowhunter's Codex", each a "Shadowhunter Book" (and collectively, the "Shadowhunter Series").

13.     The Dark-Hunter Series and the Shadowhunter Series are so similar that CLARE'S own publisher mistakenly printed 100,000 copies of a Shadowhunter Book referencing the Dark-Hunter Mark on the cover. Upon written demand by PLAINTIFF, CLARE's publisher destroyed tens of thousands of the Shadowhunter Book that contained PLAINTIFF's Dark-Hunter Mark on its cover. Despite the destruction of tens of thousands of copies of this Shadowhunter Book, thousands of Shadowhunter Books including the Dark Hunter Marks on the cover have now been sold and substantial commercial confusion has resulted.

14.     In 2013, a motion picture called "*Mortal Instruments: City of Bones"* was released (the "Motion Picture"). According to the Internet Movie Database (IMDB), the Motion Picture is based on the Shadowhunter Series and CLARE is credited as a writer. The Motion Picture includes references to "shadowhunters" as "*a secret cadre of young half-angel warriors locked in an ancient battle to protect our world from demons*."

5

15.     On October 12, 2014 it was announced that *"Mortal Instruments: City of Bones"* would return as a television series under the new title "Shadowhunters: The Mortal Instruments" (the "Shadowhunters TV Show").  IMDB credits CLARE as a writer of the 2015 Shadowhunters TV Show (which is nominally based upon the Shadowhunter Series).

16.     On March 30, 2015 the pilot was picked up to air as a series on ABC Family.

17.     CLARE's website, "shadowhunters.com" (the "Shadowhunters Website") features an advertisement for the Shadowhunters TV Show and a television tie-in special edition of the 2007 book "Mortal Instruments: City of Bones."  According to the Shadowhunters Website, the special edition book is "complete with gorgeous cover art from Shadowhunters, an ABC Family Original Series."

18.     In addition to adopting identifying marks and trade dress confusingly similar to PLAINTIFF's Dark-Hunter Marks, CLARE has also copied visual representations from the Dark-Hunter Series in conjunction with the Shadowhunter Series.  For example, the Shadowhunters symbol used by CLARE on book covers and promotional materials is essentially a simplified version of PLAINTIFF's Dark-Hunter symbol.

SHADOWHUNTER                    DARK-HUNTER



19.     The popularity of the Dark-Hunter Series has also spawned a variety of related merchandise such as a line of clothing, jewelry and novelty items.  These are available online from a variety of sources.  The same is becoming true for the Shadowhunter Series.  For example, the retail store, Hot Topic, carries an exclusive clothing line from TRIPP, nyc, that includes t-shirts with the word Shadowhunter printed across the front.  Dark-Hunter t-shirts, sold through cafepress.com, among other retailers, feature a similar font style.

20.     Adding to the confusion, a Shadowhunter line of jewelry is derivative of a similar line of Dark-Hunter jewelry licensed by PLAINTIFF.  Both feature symbols reminiscent of ancient ruins, angels, and crystals.

21.     The products are so confusingly similar that a pendant "inspired by" the Shadowhunter Series is displayed on an etsy.com webpage described as the "[o]fficial Site of Sherrilyn Kenyon's Dark-Hunter® Jewelry as well as other book inspired pieces."

22.     A website called "TMI Source, Your Source for Shadowhunters and Cassandra Clare" advertises the official licensed jewelry from the motion picture, "Mortal Instruments: City of Bones" with the tag-line, "Shadowhunters: Are you excited for this official licensed jewelry?"  The licensed jewelry is available at "themortalinstrumentsjewelry.com".

23.     In addition to the first use in interstate commerce of the Dark-Hunter Marks on novels, on websites, as well as licensed clothing and jewelry, PLAINTIFF has produced and broadcast Dark-Hunter Videos.  These videos are made available via streaming services on the PLAINTIFF's website and on YouTube and were broadcast on major television networks advertising PLAINTIFF's pending Dark-Hunter motion picture and television series (including without limitation during primetime television shows owned and broadcast by ABC Family).

Some are dramatic visual depictions of characters from the Dark-Hunter Series with plot summaries and original music videos. These Dark-Hunter Videos (and accompanying music) predate the Motion Picture and the Shadowhunter TV Show. They constitute first-use in interstate commerce of the Dark-Hunter mark in U.S. Class 038, "telecommunication services" and International Class 009, "digital media". By way of example, a video based on the Dark-Hunter Book "Archeron" has been viewed over half-a-million times on YouTube. The "Sherrilyn Kenyon Books" YouTube channel incorporating these Dark-Hunter Videos has over four million "views".

**FIRST CAUSE OF ACTION**
**(COPYRIGHT INFRINGEMENT against CLARE and DOES 1-50)**
**[17 U.S.C. § 101 et seq.]**
**("The Mortal Instruments" and Shadowhunters Series)**

24.     PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 23, inclusive, and incorporates them herein by this reference.

25.     PLAINTIFF is currently, and at all relevant times has been, the beneficial owner of all right, title, and interest in and to the copyrights in the Dark-Hunter Series.

26.     DEFENDANT CLARE, in writing The Mortal Instruments and the Shadowhunters Series knowingly and willfully copied the Dark-Hunter Series and original elements therein to create a work or works substantially similar to and derivative of the Dark-Hunter Series.

27.     DOES 1-50 knowingly and willfully contribute in some manner to copying the Dark-Hunter Series and original elements therein to create a work or works substantially similar to and derivative of the Dark-Hunter Series.

28.     Comparing the Dark-Hunter Series to CLARE'S work or works, the literary components are fictional and, in many respects, the elements are virtually identical. These substantially similar elements, coupled with DEFENDANT'S access to the Dark-Hunter Series,

8

which were widely disseminated, leave little doubt that numerous substantive original elements of the Dark-Hunter Series have been copied by DEFENDANT.

29.     The Dark-Hunter Series includes, without limitation, "Dark-Hunter", "Hellchasers", "Hell-Hunter", "Were-Hunter", "Dream-Hunter", "Dark-Hunter: Deadman's Cross", "Hunter Legends", "Dark-Hunter: Chronicles of Nick" and "Dark-Hunter: Lords of Avalon" and the works listed in Exhibit 1. PLAINTIFF has been proclaimed by Publisher's Weekly as "the reigning Queen of the Paranormal Scene" and is one of the pioneers of this genre. She was the first author in this genre to have a work listed as #1 on a major listing of literary releases.

30.     The Shadowhunter world consists of the of the Mortal Instruments, the Infernal Devices, The Dark Artifices, and The Last Hours as well as The Bane Chronicles and an e-book companion called Tales from the Shadowhunter Academy.   CLARE began writing her Shadowhunter Series after (a) PLAINTIFF began publishing the Dark-Hunter Series and (b) works from PLAINTIFF's Dark-Hunter Series had been listed on the NY Times "best seller" list. CLARE's works did not receive significant recognition until after CLARE's publisher misbranded one of CLARE's novels with PLAINTIFF's Dark-Hunter Mark.

31.     Both the Dark-Hunter Series and the Shadowhunter Series are about an elite band of warriors that must protect the human world from the unseen paranormal threat that seeks to destroy humans as they go about their daily lives. These hunters, whether "dark" or "shadow," preserve the balance between good and evil, protecting humans from being consumed or enslaved. They are both given a manual on how to conduct their mission and on how to conduct themselves when dealing with other entities and species in their fictional world.

9

32.     A non-exhaustive list of the substantial similarities in plot, setting, characters, and scenes as between the Dark-Hunter Series and the Shadowhunter Series is included in Exhibit 3, "Dark-Hunter / Shadowhunter Comparison."

33.     CLARE's willful copying of the Dark-Hunter Series infringes PLAINTIFF's copyright and CLARE intends to continue to distribute unauthorized works similar to, and derivative of, the PLAINTIFF'S Dark-Hunter Series.

34.     CLARE's wrongful and willful conduct has, and will continue to, deprive PLAINTIFF of the benefits deriving from the exploitation of the Dark-Hunter Series, and to deprive PLAINTIFF of the goodwill that would necessarily be associated therewith.

35.     PLAINTIFF has lost, and will continue to lose, substantial revenues from publication of CLARE's Shadowhunter Series and has sustained, and will continue to sustain, damages as a result of CLARE'S wrongful conduct and DEFENDANTS' production and sale of her unauthorized works similar to, and derivative of, the Dark-Hunter Series.

36.     PLAINTIFF is further informed and believes, and thereon alleges, that CLARE's wrongful and willful conduct has deprived, and will continue to deprive, PLAINTIFF of opportunities for expanding the goodwill associated with the Dark-Hunter Series.

37.     PLAINTIFF is further entitled to recover from CLARE the damages, including attorneys' fees and costs and statutory damages for copyright infringement, PLAINTIFF has sustained and will sustain, and any gains, profits, and advantages obtained by CLARE as a result of her acts of infringement above.

## SECOND CAUSE OF ACTION
## (COPYRIGHT INFRINGEMENT against CLARE and DOES 1-50)
## [17 U.S.C. § 101 et seq.]
## ("Mortal Instruments - City of Bones" Motion Picture)

38.     PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 37, inclusive, and incorporates them herein by this reference.

39.     CLARE and DOES 1-50, or some sub-set thereof, (collectively, the "Motion Picture DEFENDANTS") are credited as writers and/or producers of the 2013 motion picture "Mortal Instruments – City of Bones" (the "Motion Picture").

40.     The Motion Picture DEFENDANTS, in writing and producing the Motion Picture knowingly and willfully copied the Dark-Hunter Series and original elements therein to create a work substantially similar to and derivative of PLAINTIFF's Dark-Hunter Series.

41.     The Motion Picture DEFENDANTS copying of the Dark-Hunter Series infringes PLAINTIFF's copyright and those defendants intend to continue to distribute unauthorized works similar to, and derivative of, the Dark-Hunter Series, including the Motion Picture.

42.     The natural, probable, and foreseeable result of the Motion Picture DEFENDANTS wrongful and willful conduct has deprived, and will continue to deprive, PLAINTIFF of the benefits deriving from her own exploitation of the Dark-Hunter Series, and to deprive PLAINTIFF of the goodwill that would necessarily be associated therewith.

43.     PLAINTIFF has lost, and will continue to lose, substantial revenues from display of the Motion Picture and has sustained, and will continue to sustain, damages as a result of the Motion Picture Defendants wrongful conduct and the display of the unauthorized works similar to, and derivative of the Dark-Hunter Series.

11

44.     The Motion Picture DEFENDANTS' wrongful conduct has deprived, and will continue to deprive, PLAINTIFF of opportunities for expanding the goodwill associated with the Dark-Hunter Series.

45.     PLAINTIFF is further entitled to recover from the Motion Picture DEFENDANTS the damages, including statutory damages, attorney's fees and costs, PLAINTIFF has sustained and will sustain, and any gains, profits, and advantages obtained by the Motion Picture DEFENDANTS as a result of their acts of infringement above.

**THIRD CAUSE OF ACTION**
**(COPYRIGHT INFRINGEMENT against CLARE and DOES 1-50)**
**[17 U.S.C. § 101 et seq.]**
**(Shadowhunters TV Show)**

46.     PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 45, inclusive, and incorporates them herein by this reference.

47.     DEFENDANTS CLARE and DOES 1-50 (the "TV Show DEFENDANTS") are credited as writers and/or producers of the 2015 Shadowhunters TV Show.

48.     The TV Show DEFENDANTS, in writing and producing the Shadowhunters TV Show knowingly and willfully copied the Dark-Hunter Series and original elements therein to create a work substantially similar to and derivative of PLAINTIFF's Dark-Hunter Series.

49.     The TV Show DEFENDANTS copying of the Dark-Hunter Series infringes PLAINTIFF's copyright and those defendants intend to continue to display unauthorized works similar to, and derivative of, the PLAINTIFF'S Dark-Hunter Series, including the Shadowhunters TV Show.

50.     The natural, probable, and foreseeable result of the TV Show DEFENDANTS' wrongful conduct has been, and will continue to be, to deprive PLAINTIFF of the benefits deriving

from the exploitation of the Dark-Hunter Series, and to deprive PLAINTIFF of the goodwill that would necessarily be associated therewith.

51. PLAINTIFF has lost, and will continue to lose, substantial revenues from display, and broadcast performances of the Shadowhunters TV Show and has sustained, and will continue to sustain, damages as a result of the TV Show DEFENDANTS' wrongful conduct and the display and broadcast performance of unauthorized work similar to, and derivative of, PLAITNIFF'S Dark-Hunter Series

52. The TV Show DEFENDANTS' wrongful and willful conduct has deprived and will continue to deprive PLAINTIFF of opportunities for expanding the goodwill associated with the Dark-Hunter Series.

53. PLAINTIFF is further entitled to recover from the TV Show DEFENDANTS the damages, including statutory damages, attorney's fees and costs, PLAINTIFF has sustained and will sustain, and any gains, profits, and advantages obtained by the Shadowhunter TV Show DEFENDANTS as a result of her acts of infringement above.

**FOURTH CAUSE OF ACTION**
**(TRADEMARK INFRINGEMENT against CLARE and DOES 1-50)**
**[15 U.S.C. § 1125]**
**("The Mortal Instruments" Novels, Merchandise, and Website)**

54. PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 53, inclusive, and incorporates them herein by this reference.

55. The Shadowhunter Series and promotional websites, clothing, and associated jewelry infringe on PLAINTIFF's Dark-Hunter Marks.

56. The use and expansion of use of the term "shadowhunters" to describe CLARE's protagonists to her present attempts to rebrand all of her novels and derivative works with the term "shadowhunters," including websites and merchandise violates the fanciful Dark-Hunter Mark

13

because of their confusing similarity. The marks are likely to, and in fact have, caused commercial confusion.

57. The words "shadowhunters" and "dark-hunters" themselves are similar. The difference between dark-hunter and shadowhunter is a matter of degree. The words are essentially synonyms.

58. The words "shadowhunters" and "dark-hunters" are both used to describe supernatural beings dedicated to fighting demons and saving humanity.

59. The Shadowhunter books, Motion Picture and Shadowhunters TV Show share the same young-adult, science fiction fan demographic as the Dark-Hunter Series and the Dark-Hunter derivative works and are discussed in similar online forums and conventions, are advertised in similar on-line and print media, and form the basis for similar merchandise and branding.

60. While originally publishing her books under other titles, CLARE's books now have the words "A Shadowhunters Novel" printed along the right side (PLAINTIFF's work has the words "A Dark-Hunter Novel" printed below the main title).

61. The Shadowhunter Series refers repeatedly to shadowhunters in terms that lead to confusion with the Dark-Hunter Series. Adding to the confusion, some of CLARE's books refer to "Dark Shadowhunters" in addition to Shadowhunters and draw many "fictional-facts" from PLAINTIFF's Dark-Hunter Series.

62. The confusion between dark-hunters and shadowhunters is so pervasive that many online library catalogs use PLAINTIFF'S Dark-Hunter Marks within their description of CLARE's Shadowhunter Series. The Brentwood, Tennessee Library, The Williamson County Public Library, Portland Community College, King County Library System, Ames Public Library, McKinney Public Library, Clarkston Independence District Library, and the Burlington County

14

Library System, among many other libraries in the Middle District of Tennessee and elsewhere, describe "City of Bones" by Cassandra Clare as follows:

> Suddenly able to see demons and the *Darkhunters* who are dedicated to returning them to their own dimension, fifteen-year-old Clary Fray is drawn into this bizarre world when her mother disappears and Clary herself is almost killed by a monster.

This description of "City of Bones", which conflates the words Shadowhunters and Darkhunters, has even found its way into the book *101 Great, Ready-to-Use Book Lists for Teen*s by Nancy J. Keane, Santa Barbara, CA: Libraries Unlimited, Copyright 2012. Ms. Keane's guide is ranked #69 by Amazon.com in the category of Academic Library books.

      63.    The Shadowhunters merchandise that is sold and marketed under license by Hot Topic and other retailers further violates the fanciful Dark-Hunter Mark because of their confusing similarity. The use of similar style script on t-shits, red semi-precious stones, as well as the motifs of angels and ancient runes all lead to actual confusion.

      64.    PLAINTIFF has registered and uses the website domain name "dark-hunter.com" to promote the Dark-Hunter Series. CLARE has registered and uses the website domain name "shadowhunters.com" now to promote novels (some originally published under other titles) that CLARE has now rebranded as the Shadowhunter Series. As described above, the two domain names are confusingly similar and the associated web pages feature goods and services that are substantially similar. CLARE registered, traffics in, and uses the shadowhunters domain name in bad faith, with the intent to profit from the confusion between the shadowhunter and Dark-Hunter names.

      65.    The Dark-Hunter Marks are distinctive and, by virtue of the substantial investment and widespread promotion and distribution of the Dark-Hunter Series bearing the marks have

acquired distinctiveness as an exclusive indicator of the creative authorship of the novels and associated products.

66.     CLARE uses "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunters Marks in connection with the sale and promotion of her novels and merchandise. CLARE's use of these terms is explicitly misleading and not authorized by PLAINTIFF and is likely to cause confusion, mistake, or deception and constitutes trademark infringement in violation of Section 43 of the Lanham Act. 15 USC 1125(a)(1)(A).

67.     CLARE's use of "shadowhunters" and "dark-shadowhunters" in connection with the sale and promotion of her novels and merchandise in commercial advertising and promotion misrepresents the nature, characteristics, and qualities of both the Shadowhunter Series and the Dark-Hunter Series in violation of Section 43 of the Lanham Act. 15 USC 1125(a)(1)(B).

68.     CLARE's selection, incorporation, and use of "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunters Marks was made with full knowledge and prior and extensive use and federal registration of the Dark-Hunters Marks by PLAINTIFF and was done with a conscious intent to expressly mislead and confuse the consuming public.

69.     CLARE's acts alleged herein were willful and deliberate and have harmed PLAINTIFF in an amount to be determined at trial and such damage will increase unless CLARE is permanently enjoined from her wrongful actions.

70.     CLARE's infringing use of "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunters Marks is causing immediate and irreparable injury to PLAINTIFF and to her goodwill and reputation and will continue to damage PLAINTIFF and confuse the public unless enjoined by this Court.  Additionally, such damages will continue to occur unless this Court permanently enjoins CLARE and/or her agents from such use.

**FIFTH CAUSE OF ACTION**
**(TRADEMARK INFRINGEMENT against CLARE and DOES 1-50)**
**[15 U.S.C. § 1125]**
**("The Mortal Instruments: City of Bones" Motion Picture**
**And Related Merchandise)**

71.     PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 70, inclusive, and incorporates them herein by this reference.

72.     The use of the name "Shadowhunters" in the Motion Picture and related merchandise violates the fanciful Dark-Hunters Marks because of their confusing similarity. The marks are likely to, and in fact have, caused confusion.

73.     The Motion Picture, like the Shadowhunter Series, refers to its protagonists as "shadowhunters" who are "a line of warriors who protect our world from demons" and who are "half-human, half-angel, beings with immense powers." At least one of the Motion Picture trailers concludes with a message to "join the shadowhunters". The scroll-type script is similar to that used on the cover of PLAINTIFF'S novels.

74.     Although the official motion picture title is "The Mortal Instruments: City of Bones," the Motion Picture was primarily promoted and discussed through the use of the term "shadowhunters."

75.     The Dark-Hunters Marks are distinctive and, by virtue of the substantial investment and widespread promotion and distribution of the Dark-Hunter Series bearing these marks has acquired distinctiveness as an exclusive indicator of the PLAINTIFF's creative authorship of the of the novels and associated products.

76.     The Motion Picture DEFENDANTS used and continue to use "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunters Marks in connection with the production and distribution of the Motion Picture in theaters, the sale of digital media, streaming services, and

17

related merchandise.    Their use of these terms is explicitly misleading and not authorized by PLAINTIFF and is likely to cause confusion, mistake, or deception and constitutes trademark infringement in violation of Section 43 of the Lanham Act. 15 USC 1125(a)(1)(A).

77.    The Motion Picture DEFENDANTS' selection, incorporation, and use of "shadowhunters" and "dark-shadowhunters" as variations of Dark-Hunter Marks was made with full knowledge and prior and extensive use and federal registration of the marks by PLAINTIFF and was done with a conscious intent to expressly mislead and confuse the consuming public.

78.    The Motion Picture DEFENDANTS' acts alleged herein were willful and deliberate and have harmed PLAINTIFF in an amount to be determined at trial and such damage will increase unless the Motion Picture DEFENDANTS are enjoined from her wrongful actions.

79.    The Motion Picture DEFENDANTS' infringing use of "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunter Marks is causing immediate and irreparable injury to PLAINTIFF and to her goodwill and reputation and will continue to damage PLAINTIFF and confuse the public unless enjoined by this Court.  Additionally, such damages will continue to occur unless this Court permanently enjoins CLARE and/or her agents from such use.

### SIXTH CAUSE OF ACTION
**(TRADEMARK INFRINGEMENT against CLARE, and DOES 1-50**
**[15 U.S.C. § 1125]**
**(Shadowhunters TV Show and Website)**

80.    PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 79, inclusive, and incorporates them herein by this reference.

81.    CLARE and DOES 1-50 (collectively, the "TV Show Defendants") have infringed PLAINTIFFs trademark rights.

82.    The use of the name "Shadowhunters" and "shadowhunterstv.com" in conjunction with the ABC Family TV Show violates the fanciful Dark-Hunter Marks because of their

18

confusing similarity. As described above, the two domain names are confusingly similar. The registration and use of the shadowhunterstv.com domain name is in bad faith, with the intent to profit from the Dark Hunters Marks.

83. The Shadowhunters TV Show is promoted on a website called "shadowhunterstv.com." The Dark-Hunter Series is promoted on a website called dark-hunters.com and the Dark-Hunter Videos are broadcast on darkhuntertv.com (a website which PLAINTIFF has operated from a date pre-dating the Shadowhunters TV Show). Shadowhunters.com and shadowhunterstv.com infringe on the Dark-Hunter Marks through their use of the confusingly similar term "shadowhunters" within the web address.

84. The TV Show DEFENDANTS' copying of the Dark-Hunter Series infringes PLAINTIFF's Dark-Hunter Marks and copyright and that they intend to continue to broadcast and distribute unauthorized works similar to and derivative of the Dark-Hunter Series.

85. The Dark-Hunter Marks are distinctive and, by virtue of the substantial investment and widespread promotion and distribution of the Dark-Hunter Series bearing these marks including in conjunction with PLAINTIFF's prior use in video and audio-video derivative works have acquired distinctiveness as an exclusive indicator of creative authorship of the Dark-Hunter Series.

86. The Shadowhunters TV Show DEFENDANTS used and continue to use "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunters Marks in connection with the production and distribution of Shadowhunters TV Show, the sale of digital media, streaming services, and related merchandise based on the Shadowhunters TV Show. The TV Show DEFENDANTS use of these terms is explicitly misleading and not authorized by

PLAINTIFF and is likely to cause confusion, mistake, or deception and constitutes trademark infringement in violation of Section 43 of the Lanham Act. 15 USC 1125(a)(1)(A).

87.     The TV Show DEFENDANTS' selection, incorporation, and use of "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunters Marks were made with full knowledge and prior and extensive use and federal registration of the Dark-Hunters mark by PLAINTIFF and was done with a conscious intent to expressly mislead and confuse the consuming public.

88.     The TV Show DEFENDANTS' acts alleged herein were willful and deliberate and have harmed PLAINTIFF in an amount to be determined at trial and such damage will increase unless they are enjoined from her wrongful actions.

89.     The TV Show DEFENDANTS' infringing use of "shadowhunters" and "dark-shadowhunters" as variations of the Dark-Hunter Marks is causing immediate and irreparable injury to PLAINTIFF and to her goodwill and reputation and will continue to damage PLAINTIFF and confuse the public unless enjoined by this Court.  Additionally, such damages will continue to occur unless this Court permanently enjoins CLARE and/or her agents from such use.

**SEVENTH CAUSE OF ACTION**
**FALSE ADVERTISING and UNFAIR COMPETITION against all DEFENDANTS**
**[15 U.S.C. § 1125]**
**("The Mortal Instruments" Novels, Motion Picture, TV Show, Websites, and Merchandise)**

90.     PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 89, inclusive, and incorporates them herein by this reference.

91.     The DEFENDANTS have made false or misleading statements of fact in interstate commerce concerning the characteristics, qualities, and source of their products by infringing on the Dark-Hunters Marks.

20

92.     DEFENDANTS' marketing, advertising, promoting, distributing, and selling of the above referenced novels, motion picture, TV Show, and related merchandise using variations of the Dark-Hunter Marks is without authority or license from PLAINTIFF.  The conscious use of this mark, combined with the implied representation that the DEFENDANTS' works originated with, are associated with, or are endorsed or approved by PLAINTIFF constitute unfair competition and false advertising in violation of the Lanham act.

93.     DEFENDANTS use of the Dark-Hunter Marks was done with the intent to deceive the consuming public.

94.     CLARE has misled consumers to believe that there is an affiliation or association between her Shadowhunter Series, websites, and merchandise and similar items written or licensed by the PLAINTIFF.

95.     The Motion Picture DEFENDANTS have, by use of the word shadowhunter, misled consumers to believe that there is an affiliation or association between the Motion Picture, its promotional websites and merchandise and the Dark-Hunter Series.

96.     The TV Show DEFENDANTS have, by use of the word shadowhunter, misled consumers to believe that there is an affiliation or association between the Shadowhunters TV Show and the Dark-Hunter Series.

97.     A substantial portion of the DEFENDANTS intended audience is actually deceived, or tends to be deceived into believing there is a connection to the Dark-Hunter Series by the use of the term "shadowhunters."

98.     Consumers are likely influenced into reading or viewing the DEFENDANTS works by their false belief that the works are connected to, or produced by, the PLAINTIFF.  In the alternative, consumers are less likely to read the Dark-Hunter Series or purchase Dark-Hunter

21

Series merchandise because they incorrectly associate the poor quality of the DEFENDANTS work or works with the Dark-Hunter Series.

99.    The PLAINTIFF is harmed by the confusion between PLAINTIFF'S federally registered Dark-Hunter Marks and DEFENDANTS use of the substantially similar shadowhunters. Consumers may mistakenly spend money on the DEFENDANTS' products in the belief that they are going to receive works by the PLAINTIFF.  In the alternative, the value of the Dark-Hunter Series is reduced by the incorrect association with a work or works that are of inferior quality or present plots and characters that are perceived as being inconsistent with the universe created in the Dark-Hunter Series.

100.    DEFENDANTS acts alleged herein were willful and deliberate and have harmed PLAINTIFF in an amount to be determined at trial, and such damage will increase unless DEFENDANTS are enjoined from their wrongful actions.

101.    DEFENDANTS infringing use of the Dark-Hunters Mark is causing immediate and irreparable injury to PLAINTIFF and to her goodwill and reputation and will continue to damage PLAINTIFF and confuse the public unless enjoined by this Court.  PLAINTIFF has no adequate alternative remedy at law to an injunction.

**EIGHTH CAUSE OF ACTION**
**TRADE DRESS INFRINGEMENT against all DEFENDANTS**
**[15 U.S.C. § 1125]**
**("The Mortal Instruments" Novels, Motion Picture, TV Show, Websites, and**
**Merchandise)**

102.    PLAINTIFF re-alleges each and every allegation set forth in Paragraphs 1 through 101, inclusive, and incorporates them herein by this reference.

103.    PLAINTIFF created distinctive logos, symbols, book cover designs and trade dress for the Dark-Hunter series featuring tattooed, muscular characters, runes, letters reminiscent of

ancient scrolls, and the Dark-Hunter logo referenced in paragraph 18. This trade dress has come to be recognized by the purchasing and consuming public as emanating from PLAINTIFF and designating PLAINTIFF as the source of origin of the Dark-Hunter Series. Plaintiff's trade dress is shown in Exhibit 4, attached.

104.    Sometime after PLAINTIFF had adopted her distinctive trade dress and in an effort to pass off the Shadowhunter Series as the Dark-Hunter series of the PLAINTIFF, CLARE adopted and continues to employ confusingly similar trade dress. The DEFENDANT's trade dress is shown in Exhibit 5, attached.

105.    PLAINTIFF, prior to the beginning of the unlawful acts of the DEFENDANT complained of here, distributed great numbers of the mentioned Dark-Hunter Series bearing the distinctive trade dress in connection with the marketing and selling of the Dark-Hunter Series, and the public and the trade generally, throughout the United States, came to associate and do associate the distinctive appearance, color and indicia of such trade dress with the Dark-Hunter Series, as the source of origin of the work or works.

106.    After PLAINTIFF had originated, adopted and extensively used her trade dress in connection with the merchandising of the Dark-Hunter Series and after such trade dress had become well-known to the public and trade generally in that connection and identified by them with the PLAINTIFF by reason of the distinctive appearance and indicia on it, DEFENDANT, with full knowledge of the facts set forth above, and with the intention of appropriating unto herself the goodwill and sales appeal, and the trade and public preference for, the Dark-Hunter Series, achieved by the PLAINTIFF for extensive exploitation and knowing of the good name and reputation acquired by PLAINTIFF in the sale of the Dark-Hunter Series, and in order to deprive PLAINTIFF of the gains, profits, benefits and advantages that might and otherwise should and

would have accrued to her, with intent to injure and defraud the PLAINTIFF and to deceive and confuse the purchasing public in trade as to the origin or source of the Shadowhunter Series, and for the purpose of trading upon and taking advantage of the reputation and goodwill of the PLAINTIFF and to produce a false impression, did unlawfully, unjustly, wrongfully and in willful disregard of the PLAINTIFF's rights, appropriate, simulate, copy and imitate PLAINTIFF's trade dress and employed and continues to employ her imitative trade dress in this district as well as the United States, in connection with the selling and offering for sale of the Shadowhunter Series, the Shadowhunter Motion Picture, and the Shadowhunter TV Show.

107.    The continued unauthorized use by the DEFENDANT of the confusingly similar trade dress in connection with work or works of the same kind as the Dark-Hunter Series, has caused and will inevitably cause, confusion and deception to the trade and public, and will lead them erroneously to associate the work or works of the DEFENDANT with the PLAINTIFF, and erroneously to believe the Shadowhunter Series, Motion Picture, and Shadowhunter TV Show are either sold or sponsored by the PLAINTIFF or being placed upon the market with the consent and authority of the PLAINTIFF, as a result of which the continued use by DEFENDANT of such trade dress has caused, and unless restrained, will continue to cause serious and irreparable injury to the PLAINTIFF.

108.    DEFENDANT appropriated PLAINTIFF's distinctive trade dress as stated with the intent and purpose of misleading the trade and public, simulating PLAINTIFF's Dark-Hunter Series and trade dress, and wrongfully trading upon and benefiting from, the goodwill built up by the PLAINTIFF.

109.    The continued simulation by DEFENDANT of PLAINTIFF's trade dress and all of the deceptive acts of the DEFENDANT as alleged above, has caused, and will continue to cause,

confusion and deception to the trade and the public, and the unfair competition by the DEFENDANT has caused, and unless restrained, will continue to cause, confusion and deception of the trade and public, and the unfair competition by DEFENDANT has caused, and unless restrained will continue to cause, serious and irreparable injury to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as follows:

**1. COPYRIGHT INFRINGEMENT**

A. That the Court find that DEFENDANTS have infringed PLAINTIFF's copyrights in the Dark-Hunter Series;

B. That the Court find a substantial likelihood that DEFENDANTS will continue to infringe PLAINTIFF's copyrights in the Dark-Hunter Series unless enjoined from doing so;

C. That DEFENDANTS, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing PLAINTIFF's copyrights in the Dark-Hunter Series or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, import, publicly perform, broadcast, or manufacture any works derived from, substantially similar to, or copied from the Dark-Hunter Series or to participate or assist in any such activity;

D. That DEFENDANTS, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to recall from all distributors, wholesalers, jobbers, dealers, retailers, and distributors, and all others known to DEFENDANTS, any originals, copies, facsimiles, or duplicates of any works

25

shown by evidence to infringe any copyright in the Dark-Hunter Series or the Dark-Hunter Marks;

E. That DEFENDANTS be enjoined to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies, facsimiles, or duplicates of any work shown by the evidence to infringe any copyright in the Dark-Hunter Series;

F. That DEFENDANTS be enjoined from using, and ordered to remove, any uniform resource locator ("URL" or "web-address), Twitter handles, Facebook pages, or other online resource that infringes upon PLAINTIFF's copyright, including, but not limited to "shadowhunters.com" or "shadowhunterstv.com," "@shadowhunterstv," and "facebook.com/shadowhuntersseries,"

G. That DEFENDANTS be required to file with the Court and to serve on PLAINTIFF, within 30 days after service of the Court's order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which DEFENDANTS have complied with the Court's order;

H. That at PLAINTIFF's election, if so made, judgment be entered for PLAINTIFF and against DEFENDANTS for PLAINTIFF's actual damages according to proof, and for any profits attributable to infringements of PLAINTIFF's copyrights in the Dark-Hunter Series, in accordance with proof;

I. That at PLAINTIFF's election, if so made, judgment be entered for PLAINTIFF and against DEFENDANTS for statutory damages based upon DEFENDANTS' acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. § 101, et seq.;

J.  That at PLAINTIFF's election, if so made, DEFENDANT attribute appropriate writing and creative credit to PLAINTIFF;

K.  That DEFENDANTS be required to account for all of their gains, profits, and advantages derived from DEFENDANTS' acts of infringement and for their other violations of law alleged herein;

L.  That all gains, profits, and advantages derived by DEFENDANTS from their acts of infringement and other violations of law alleged herein be deemed to be held in constructive trust for the benefit of PLAINTIFF;

M.  That PLAINTIFF have judgment against DEFENDANTS for PLAINTIFFS' costs and attorneys' fees;

N.  That the Court grant such other and further relief as the Court deems just and proper under the circumstances;

2.  **TRADEMARK INFRINGEMENT (Including Unfair Competition, False Advertising, and Trade Dress)**

O.  That permanent injunctive relief issue restraining DEFENDANTS, their officers, agents, servants, employees, representatives, successors and assigns, attorneys, and all those in active concert or participation with them from:

   i.  Using the Dark-Hunter Marks, trade dress, or any element thereof or substantially or confusingly similar to, including "shadowhunter" or "dark shadowhunter" that makes DEFENDANTS' use confusingly similar to the Dark-Hunter Mark, in the marketing, promotion, distribution, pubic performance, broadcast, and or sale of any literary work, article of clothing, jewelry, video production, television

27

broadcast, or motion picture in any format, including DVD, Blu-Ray, digital downloads, or streaming services, or any related goods or services; or

ii. Infringing the Dark-Hunter Marks or trade dress, unfairly competing with PLAINTIFF, or otherwise injuring PLAINTIFF'S business reputation in any manner;

iii. Importing infringing products in the United States, as per 15 USC 1124;

P. That DEFENDANTS shall destroy all publications, DVDs, DVD covers, posters, software, brochures, labels, signs, or other promotional materials that use the Dark-Hunter Marks, trade dress, or any element thereof, including "shadowhunter" or "dark shadowhunter" that makes DEFENDANTS' use confusingly similar to the Dark-Hunter Marks;

Q. That DEFENDANTS be enjoined from using, and ordered to remove, any uniform resource locator ("URL" or "web-address), Twitter handles, Facebook pages, or other online resource that infringes upon PLAINTIFF's copyright, including, but not limited to "shadowhunters.com" or "shadowhunterstv.com," "@shadowhunterstv," and "facebook.com/shadowhuntersseries."

R. That DEFENDANTS shall pay PLAINTIFF compensatory damages and lost profits in an amount according to proof;

S. That DEFENDANTS shall pay PLAINTIFF actual or statutory damages, as elected by PLAINTIFF, as well as treble damages pursuant to 15 USC 1117(a) through (d).

T. That PLAINTIFF be awarded her reasonable attorney fees pursuant to 15 USC 1117(a);

U. That PLAINTIFF be awarded her costs in bringing this action;

V. That PLAINTIFF be awarded all such other and further relief as the Court deems just and proper.

28

## JURY DEMAND

PLAINTIFF hereby demands a jury trial with respect to all issues so triable of right by jury.

Dated:  February 5, 2016.

Respectfully submitted,

FROST BROWN TODD LLC

s/ James E. Mackler
James E. Mackler (BPR 024855)
William L. Campbell, Jr. (BPR 022712)
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
615.251.5550 Telephone
615.251-5551 Facsimile
jmackler@fbtlaw.com
ccampbell@fbtlaw.com

*Attorneys for Plaintiff Sherrilyn Kenyon*

0132504.0632346  4816-6193-4893v1