**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SHERRILYN KENYON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:16-cv-0191** |
| **v.** | ) | |
| | ) | **Judge Crenshaw** |
| **CASSANDRA CLARE,** | ) | **Magistrate Judge Knowles** |
| **a/k/a JUDITH RUMELT,** | ) | |
| **a/k/a JUDITH LEWIS,** | ) | **JURY DEMAND** |
| | ) | |
| **and** | ) | |
| | ) | |
| **DOES 1 through 50,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### FIRST AMENDED COMPLAINT

---

PLAINTIFF SHERRILYN KENYON ("PLAINTIFF"), for her First Amended Complaint against DEFENDANT CASSANDRA CLARE a/k/a JUDITH RUMELT, a/k/a JUDITH LEWIS, an individual ("CLARE"), and DEFENDANTS DOES 1 through 50, inclusive ("DOES") (collectively, "DEFENDANTS"), states as follows:

### PARTIES

1.      PLAINTIFF is a citizen of the State of Tennessee who resides in Franklin, Tennessee, and is the author of a family of books, short stories, and other original materials, dating from 1998.  This family of books includes, among others, works written by PLAINTIFF and published as part of the "Dark-Hunter," "Hellchasers," "Hell-Hunter," "Were-Hunter," "Dream-Hunter," "Dark-Hunter: Deadman's Cross," "Hunter Legends," "Dark-Hunter: Chronicles of Nick," "Dark-Hunter: Lords of Avalon," series, related graphic novels, and the works listed in **Exhibit 1** (referred to collectively herein as the "Dark-Hunter Series").

1

2.     CLARE is a resident and citizen of Amherst, Massachusetts, and is the author of a family of books that include the series of "Mortal Instruments" novels along with "The Infernal Devices," "The Dark Artifices," "Tales from the Shadowhunter Academy," "The Bane Chronicles," "The Last Hours," "The Shadowhunter's Codex," and related graphic novels (each a "Shadowhunter Book," and collectively, the "Shadowhunter Series").

3.     The true names and capacities of DEFENDANTS DOES 1 through 50, inclusive, are presently unknown to PLAINTIFF, who, therefore, sues these DEFENDANTS by such fictitious names.  Each DEFENDANT designated as a DOE is in some manner responsible for the occurrences alleged herein, and the injuries and damages suffered by PLAINTIFF were proximately caused by the conduct of such DOE DEFENDANTS.  PLAINTIFF will seek leave of Court to amend this Amended Complaint to allege the true names and capacities of each DOE DEFENDANT, together with such allegations as may be appropriate, when their names have been ascertained.

**JURISDICTION AND VENUE**

4.     As this case states claims for infringement of trademarks and unfair competition under the Lanham Act, this court has original jurisdiction over this matter pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, and 28 U.S.C. § 1338(a).  This Court likewise has original jurisdiction over the unfair competition claim arising under the common law of Tennessee pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest, as well as pursuant to § 1338(b).

5.     This Court has personal jurisdiction over DEFENDANTS, as DEFENDANTS purposefully availed themselves of the privilege of acting in Tennessee, the claims herein arise

2

out of their activities within the state, and the Court's jurisdiction over DEFENDANTS is reasonable. CLARE has, among other acts, entered into contracts with Tennessee vendors for the promotion of her infringing works, has personally travelled to Tennessee to promote the sale of her infringing works, and has directly promoted the sale of her infringing works to Tennessee residents through electronic communication. Additionally, upon information and belief, CLARE and the DOE DEFENDANTS have also entered into contracts, either directly or through her/their representatives, that require CLARE's infringing works be sold or distributed in Tennessee. Moreover, CLARE's website (www.shadowhunters.com) is highly interactive and allows residents of Tennessee to sign up for an "author alerts" mailing list whereby they can learn of new releases, get recommendations, special offers, and a free eBook. The website provides a link whereby Tennessee residents can read the first 100 pages of the first book in the Shadowhunter Series. Tennessee residents can also interact with the author through links to various social media platforms. Tennessee residents can even download various extras including (1) images from the Shadowhunter series; (2) a program whereby Tennessee residents can embed code to add the Cassandra Clare countdown widget to their blogs and websites in order to always know when the next Shadowhunters book is coming out; (3) an emoji keyboard app; (4) a shadowhunters app; (5) discussion guides; and (6) videos. These acts of CLARE and the DOE DEFENDANTS, or consequences caused by same, have a substantial enough connection with this District to make the exercise of jurisdiction over CLARE and the DOE DEFENDANTS consistent with the principles of due process.

6. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a) because PLAINTIFF is a citizen and resident of the Middle District of Tennessee and a substantial part of

3

the events or omissions giving rise to the claim occurred in this district, including, without limitation, the sale and promotion of the infringing works by CLARE.

## FACTUAL ALLEGATIONS

### The Dark-Hunter Series and Marks

7.     The Dark-Hunter Series of novels is a #1 *New York Times* and international bestselling series.  The author, PLAINTIFF, has a global fan base for the Dark-Hunter Series. This community of fans immerses themselves in the detailed fictional universe contained within the world of the Dark-Hunter Series.  The fans create their own videos, discuss the books on social media, collect memorabilia, attend conventions, dress in character-inspired costumes, and are known to complain loudly about any inconsistencies they perceive within the fictional universe.  The perceived integrity of the Dark-Hunter Series and the realm and fictional facts created by PLAINTIFF in the Dark-Hunter Series portrayed is, therefore, critical to PLAINTIFF's success and the continued commerce in her Dark-Hunter Series.

8.     PLAINTIFF is the owner of certain trademark rights in, among others, the word-marks "Dark-Hunter," "Dream-Hunter," and "Were-Hunter," without any restriction to the particular font style, size, or character, including without limitation those federal registrations contained in **Exhibit 2**.  This family of marks is collectively referred to herein as the "Dark-Hunter Marks."

9.     The Dark-Hunter Marks are fanciful and distinctive, and by virtue of the substantial investment and widespread promotion and distribution of the Dark-Hunter Series bearing the marks, the Dark-Hunter Marks have acquired secondary meaning as an exclusive indicator of the creative authorship of the novels and associated products.

4

10.     PLAINTIFF is also the creator and owner of several fanciful symbols created by PLAINTIFF and used within her Dark-Hunter Series novels and derivative works and marketing materials.

11.     In or around 2000, PLAINTIFF registered and began using the website domain name "dark-hunter.com" to promote her Dark-Hunter Series and provide additional content regarding the Dark-Hunter world. PLAINTIFF's website also features detailed character profiles that include photographs, backstories, biographies, and even commentary from the characters in her Dark-Hunter Series, including characters who had not yet been featured in her Dark-Hunter Series novels. PLAINTIFF's Dark-Hunter Series quickly and almost immediately gained in popularity and resulted in a following of loyal and faithful readers who identified the world created in the Dark-Hunter Series with the work of PLAINTIFF.

12.     PLAINTIFF has also produced several television commercials and videos based upon the Dark-Hunter Series, all of which are collectively referred to herein as "Dark-Hunter Videos." These professionally-made videos are available through PLAINTIFF's website and on streaming websites such as YouTube.com, and were broadcast on major television networks advertising PLAINTIFF's Dark-Hunter works, (including without limitation during primetime television shows owned and broadcast by ABC Family). Dark-Hunter Videos are also broadcast on Darkhunter.TV (a website which PLAINTIFF has operated since 2008).

13.     The Dark-Hunter Videos include dramatic visual depictions of characters from the Dark-Hunter Series with plot summaries and original music videos. They are primarily used as book trailers, television commercials, and teasers, and are intended to accurately depict the characters from the Dark-Hunter Series as they are described in the Dark-Hunter Series. By way of example, a high-budget, Hollywood-produced video commissioned by PLAINTIFF and her

publisher to advertise and promote the Dark-Hunter Book "Acheron" has been viewed over half-a-million times on YouTube.com. The "Sherrilyn Kenyon Books" YouTube channel incorporating these Dark-Hunter Videos has over four million "views."

14.     The popularity of the Dark-Hunter Series has also spawned a variety of related merchandise such as a line of Ashton-Drake collectible dolls, clothing, coloring books, jewelry and novelty items. These items are available online from a variety of sources.

**The Shadowhunter Series**

15.     In 2006, PLAINTIFF was alerted by distressed Dark-Hunter fans that CLARE had begun marketing a work that incorporated one of PLAINTIFF's Dark-Hunter Marks for the name of her protagonists.

16.     In response, PLAINTIFF demanded that the term "Darkhunter" be removed from CLARE's work.

17.     While CLARE initially refused and delayed changing the name of her protagonists, CLARE ultimately removed the term "Darkhunter" from her work, substituting "Shadowhunters" instead. The book was published in 2007 as "The Mortal Instruments: City of Bones."

18.     Before "The Mortal Instruments: City of Bones" was published, CLARE and her publishers assured Kenyon that "Shadowhunters" would be used solely for the name of CLARE's protagonists and that she/they would not expand the use of the "shadowhunters" term or adopt it as a trademark.

19.     Despite assurances from CLARE and CLARE's publisher that she/they would not expand the use of the "Shadowhunters" term or adopt it as a trademark in 2006 and again in 2009, CLARE recently began expanding her use of the term "Shadowhunters" from a mere

6

description of her protagonists to a complete rebranding of her works so as to be confusingly similar to the Dark-Hunter Series.

20.     CLARE now uses the website domain name "shadowhunters.com" (the "Shadowhunters Website") to promote her novels, which are under the category of "Cassandra Clare's Shadowhunters."

21.     In 2013, a motion picture called "*Mortal Instruments: City of Bones*" was released (the "Motion Picture").  According to the Internet Movie Database (IMDB), the Motion Picture is based on the Shadowhunter Series and CLARE is credited as a writer.  The Motion Picture summary reads:

> When her mother disappears, Clary Fray learns that she descends from a line of warriors who protect our world from demons.

22.     Although the official motion picture title is "The Mortal Instruments: City of Bones," the Motion Picture was primarily promoted and discussed through the use of the term "Shadowhunters."

23.     On October 12, 2014, it was announced that "*Mortal Instruments: City of Bones*" would return as a television series under the new title "Shadowhunters: The Mortal Instruments" (the "Shadowhunters TV Show").  IMDB credits CLARE as a writer of the 2015 Shadowhunters TV Show (which is nominally based upon the Shadowhunter Series).

24.     On March 30, 2015, the pilot of the Shadowhunters TV Show was picked up to air as a series on ABC Family.

25.     The Shadowhunters TV Show is promoted on a website called "shadowhunterstv.com," which is similar to the website domain used to promote the Dark-Hunter Series.

26.     The Shadowhunters Website features an advertisement for the Shadowhunters TV Show and a television tie-in special edition of the 2007 book "Mortal Instruments: City of Bones."  According to the Shadowhunters Website, the special edition book is "complete with gorgeous cover art from Shadowhunters, an ABC Family Original Series."

27.     Also in 2015, CLARE began releasing redesigned book covers that include the words "A Shadowhunters Novel" printed along the right side or bottom of the covers.

28.     This rebranding by CLARE to feature "Shadowhunters" caused renewed confusion in the marketplace between the Shadowhunter Series and derivative works.  For example, fans who attended the 2015 New York City Comic-Con contacted PLAINTIFF asking if the Shadowhunter television show promoted at the convention was her creation.

### CLARE's Unauthorized Use of "Darkhunter"

29.     The Dark-Hunter Series and the Shadowhunter Series are so similar that in late 2008 or early 2009, CLARE'S own publisher printed approximately 100,000 copies of a Shadowhunter Book referring to the story's protagonists as "Darkhunters" instead of "Shadowhunters" on the back cover.

30.     Upon information and belief, numerous editors, publishing staff, and CLARE herself, signed off on the final version of the revised Shadowhunter Book cover containing the word "Darkhunter" before it was printed.  The revised cover displaying the word "Darkhunter," which featured a bare-chested, muscular man extremely similar in style and form to the original Dark-Hunter covers for which PLAINTIFF's books had been known, also included quotes from other authors describing the book as "sexy."

31.     As soon as PLAINTIFF became aware of the mislabeled Shadowhunter Books, she made a written demand upon CLARE's publisher to correct the misbranding, recall all

8

mislabeled copies of the Shadowhunter Book, require that CLARE issue an announcement on her website and through other publications regarding the misbranding, and take any other step necessary to eliminate the initial confusion to consumers and PLAINTIFF's fans caused by the misbranding.

32.     PLAINTIFF was aware of the type of confusion that could result from her fans seeing one of her Dark-Hunter Marks on a bookstore shelf, especially on a book that was being advertised as part of a Young Adult series ("YA series") where CLARE's publisher was calling the books "sexy" and using quotes similar to those of PLAINTIFF's titles just months before PLAINTIFF was to release her own much-anticipated and heavily promoted YA series, which featured the well-known and established backstory of a fan-favored character in her Dark-Hunter Series, Nick Gautier.  This series tells the well-established story that was first told in the Dark-Hunter novel, Night Pleasures (2002) of when Nick, a teenage boy who believed himself to be quite ordinary, is introduced to the supernatural world around him of warriors who kill demons to protect mankind.  As such, PLAINTIFF's fans who were expecting a YA series to be spun off from the traditional Dark-Hunter Series initially mistook CLARE's mislabeled Shadowhunter Book to be the YA series spin-off from the Dark-Hunter Series.

33.     Upon written demand by PLAINTIFF, CLARE's publisher destroyed some of the Shadowhunter Books that contained the word "Darkhunter" on its cover that had yet to leave the warehouse, but refused to recall the tens of thousands of others that were already in stores or that had been sold.

34.     Due to the Publisher's refusal to recall the tens of thousands of copies of the mislabeled Shadowhunter Book, thousands of Shadowhunter Books bearing the Dark-Hunter Mark on the cover have now been sold across the country, including in Franklin, Tennessee.

35.     Although PLAINTIFF made every effort to ensure that the mislabeled copies of the Shadowhunter Book were removed from the marketplace, and to eliminate the confusion among consumers as to the source of the mislabeled Shadowhunter Books, by the time the mislabeled books were in the marketplace, the damage was already done.

36.     Due to the presence of "Darkhunters" on the cover of CLARE's Shadowhunter Book, confused purchasers took to online forums and message boards asking whether "Cassandra Clare" was a pen-name for PLAINTIFF.   For example, one consumer posted as follows:

**Is Sherri Cassandra Clare?**

I was in a bookstore today and there was a book called City of Bones written by Cassandra Clare that says its [sic] about Darkhunters.  Is that supposed be Nick's book?  Does Sherri write as Cassandra Clare like she does Kinley MacGregor?  Is this a Sherri series I'm missing that I should be buying?

37.     The sale of the "Darkhunter" copies of CLARE's Shadowhunter Book led to substantial commercial confusion between CLARE's Shadowhunter Book and PLAINTIFF's Dark-Hunter Series, which benefited CLARE.

38.     Indeed, CLARE's works did not receive significant recognition until after her Shadowhunter Book was mislabeled.   In 2009, following the misbranding, CLARE's "store events" began to change.  A recent article in the *New York Times* quotes CLARE as follows:

They [CLARE and her husband] moved to Amherst in 2009, when Ms. Clare's third book was published. Around that time, her store events began to change. "My first book event, my parents showed up, and maybe 10 people," she said. "For 'City of Glass,' I went to Toronto for an event and 1,000 people appeared. I thought, my God, did something happen?"

*See* Penelope Green, *Cassandra Clare Created a Fantasy Realm and Aims to Maintain Her Rule,* NEW YORK TIMES, April 23, 2016, *available at* http://www.nytimes.com/2016/04/24/fashion/cassandra-clare-shadowhunters-lady-midnight.html?_r=1

39.     The confusion between "Dark-Hunters" and "Shadowhunters" continues to be so pervasive today that many online library catalogs use one of PLAINTIFF's Dark-Hunter Marks within their description of CLARE's Shadowhunter Series.  The Brentwood, Tennessee Library, The Williamson County, Tennessee Public Library, Portland Community College, King County Library System, Ames Public Library, McKinney Public Library, Clarkston Independence District Library, and the Burlington County Library System, among many other libraries in the Middle District of Tennessee and elsewhere, describe "City of Bones" by Cassandra Clare as follows:

> Suddenly able to see demons and the *Darkhunters* who are dedicated to returning them to their own dimension, fifteen-year-old Clary Fray is drawn into this bizarre world when her mother disappears and Clary herself is almost killed by a monster.

This description of "City of Bones," which conflates the words "Shadowhunters" and "Darkhunters," has even found its way into the book *101 Great, Ready-to-Use Book Lists for Teen*s by Nancy J. Keane, Santa Barbara, CA: Libraries Unlimited, Copyright 2012.  Ms. Keane's guide is ranked #69 by Amazon.com in the category of Academic Library books.

40.     As such, even today, a consumer searching for a book from PLAINTIFF's Dark-Hunter Series may encounter a description of CLARE's Shadowhunter Book containing PLAINTIFF's mark, perpetuating the consumer confusion between the Dark-Hunter Series and the Shadowhunter Series.

## Similarities and Confusion Between the Works

41.     From the time CLARE released her Advanced Reading Copy ("ARC") of "City of Bones," consumer confusion arose between CLARE's novel and the Dark-Hunter Series, leading consumers to question whether "Cassandra Clare" was actually a pen-name of PLAINTIFF.

11

42.     The Shadowhunter Series and its derivative works share the same fan demographic as the Dark-Hunter Series and its derivative works, and are promoted, discussed and celebrated in similar online forums and at similar conventions.   Moreover, both are advertised in similar on-line and print media, and form the basis for similar merchandise and branding.

43.     While "City of Bones" and the other novels in the Shadowhunter Series are categorized as Young Adult, the series is targeted to readers well beyond that demographic, including readers of science-fiction and urban fantasy romance novels, as evidenced by CLARE's marketing for the book, the book covers and reviews.  The ARC for "City of Bones" described the story a "deliciously exotic urban fantasy."  Additionally, the cover featured a bare-chested, muscular man, and early versions, including the 2009 "Darkhunter" covers, featured author reviews describing the novel as "sexy."

44.     The Dark-Hunter Series follows an elite cadre of warriors who fight to protect mankind from demons and others who prey on humans.   Like the Dark-Hunter series, the Shadowhunter Series features an elite band of warriors that must protect the human world from the unseen paranormal threat that seeks to destroy humans as they go about their daily lives. These hunters, whether "dark" or "shadow," preserve the balance between good and evil, protecting humans from being consumed or enslaved.    The warriors in both series are given a manual on how to conduct their mission and on how to conduct themselves when dealing with other entities and species in their fictional world.    Among other similarities, Dark-Hunters and Shadowhunters are each part of a well-organized secret society, dress primarily in black clothing, have supernatural powers, have extraordinary fighting skills, and patrol at night for demonic/evil supernatural threats to humans.

45.     The origin story for CLARE's Shadowhunters even shares elements with the origin story for Dark-Hunters first created by PLAINTIFF.  For example, Dark-Hunters are given a choice to become Dark-Hunters and are bestowed their powers by the goddess, Artemis, as a gift in exchange for an eternal commitment to fight evil beings called Daimons.  Likewise, Raziel created the first Shadowhunter in order to form a race of beings to battle demons.  Raziel created the first Shadowhunter by mixing his blood with the blood of a human and giving it to the human to drink, giving the gift of magical powers. Acheron, the first Dark-Hunter, was created as a Dark-Hunter when the goddess Artemis gave him her blood in a cup for him to drink, thereby mixing their blood and powers.

46.     Additionally, the similarities between the terms "Dark-Hunter" and "Shadowhunter" are immediately apparent.  In both the Dark-Hunter Series and the Shadowhunter Series, the terms are used to describe the primary group of heroes, both of which are supernatural beings dedicated to fighting demonic/evil forces and saving humanity.  Both terms have the suffix "hunter" following essentially synonymous words ("dark" and "shadow").  Adding to the confusion, CLARE's works also include references to "Dark Shadowhunters."

47.     Moreover, the terms "dark" and "shadow" both appear in the Dark-Hunter creed and tagline authored by PLAINTIFF.  The Dark-Hunter creed and tagline, presented for the first time on the Dark-Hunter website in 2000, in promotional printed materials and national advertisements in 2001, and in in the novels "Night Pleasures" (2002) and "Night Embrace" (2003), is well known by fans of Kenyon's work.  The creed and tagline states as follows: "We are Darkness.  We are Shadow.  We are Rulers of the Night.  We are the Dark-Hunters."

48.     The likelihood of confusion between the Dark-Hunter world and the Shadowhunter world is further compounded by PLAINTIFF's consistent use of the suffix

"hunter" for the unique and other supernatural species she created in the Dark-Hunter world and has developed as their own separate #1 bestselling international series. As such, CLARE's placement of "Shadowhunters" in a fictional world similar to the Dark-Hunter world makes "Shadowhunters" appear to be a natural extension of the well-established Dark-Hunter Series brands and trademarks.

49. In addition, CLARE now uses the website domain name "shadowhunters.com" to promote her Shadowhunter Series. CLARE's domain name is confusingly similar to the registered domain name "dark-hunter.com," which PLAINTIFF began using to promote her Dark-Hunter Series in the early 2000s. Both webpages feature content, goods and services that are substantially similar.

50. CLARE has also copied visual representations from the Dark-Hunter Series in conjunction with the Shadowhunter Series. For example, the Shadowhunters symbol CLARE now uses on her book covers and promotional materials is essentially a simplified version of a symbol created by PLAINTIFF and used in PLAINTIFF's Dark-Hunter spin-off Series Dream-Hunter, which was created by PLAINTIFF and first used to promote her Dark-Hunter Series at events and conventions as early as 2006. Moreover, the visual representations of CLARE's characters and world used on her book covers, marketing materials, graphic novels, website and in the Shadowhunters TV Show and Motion Picture, are essentially duplicative of the visual representations of PLAINTIFF's characters and world used on her book covers, marketing materials, graphic novels, website and in the Dark-Hunter videos.

51. This copied visual representation of PLAINTIFF's world, characters and symbols is also used on Shadowhunters merchandise that is sold and marketed under license by Hot Topic and other retailers. This merchandise features a style of script on t-shirts, red semi-precious

14

stones, and motifs of angels and ancient runes that are confusingly similar to those first used by PLAINTIFF on merchandise related to the Dark-Hunter Series.

52.     Upon information and belief, DOE DEFENDANTS (other companies or individuals), the names of which are not currently known by PLAINTIFF, assisted CLARE in the actions described in this Amended Complaint.  Each act and omission alleged herein on the part of any DOE DEFENDANT was, upon information and belief, done with the approval and consent of, and was ratified by, each DOE DEFENDANT.  Further, each DOE DEFENDANT had the right and ability to control the actions alleged herein, and had a direct financial interest in such activities, regardless of whether each DOE DEFENDANT had intent or knowledge of the infringement alleged in this Amended Complaint.

<u>**COUNT I**</u>
**VIOLATION OF 15 U.S.C. § 1114 AGAINST ALL DEFENDANTS**
<u>**(Mislabeled Shadowhunter Series Novel)**</u>

53.     PLAINTIFF re-alleges each and every allegation set forth above, and incorporates them herein by this reference.

54.     In or around 2009, CLARE, her publisher, and other currently unknown DOE DEFENDANTS, printed approximately 100,000 copies of a Shadowhunter Book that used "Darkhunter" to describe CLARE's protagonists on the back cover.  DEFENDANTS distributed and sold the majority of these mislabeled copies of the Shadowhunter Book in the marketplace.

55.     DEFENDANTS were not permitted or authorized to use PLAINTIFF's Dark-Hunter Mark on CLARE's Shadowhunter Book.

56.     DEFENDANTS' use of the Dark-Hunter Mark on CLARE's Shadowhunter Book creates a likelihood of confusion among consumers as consumers may, and in fact did, falsely assume that the Shadowhunter Book is part of the Dark-Hunter Series.

15

57.   DEFENDANTS' unauthorized use of the Dark-Hunter Mark on the published copies of a Shadowhunter Book constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

58.   DEFENDANTS' use of the Dark-Hunter Mark was made with full knowledge of PLAINTIFF's prior and extensive use of her registered Dark-Hunter Mark, and, upon information and belief, was done with the conscious, willful and deliberate intent to divert to DEFENDANTS the benefit of the reputation and goodwill symbolized by the Dark-Hunter Mark, which belongs exclusively to PLAINTIFF.

59.   DEFENDANTS' infringing use of the Dark-Hunter mark has caused, and is causing, immediate and irreparable injury to PLAINTIFF and to her goodwill and reputation, and will continue to damage PLAINTIFF and confuse the public unless enjoined by this Court.

60.   Upon information and belief, DEFENDANTS' actions were willful, deliberate and designed to trade upon the consumer goodwill enjoyed by PLANTIFF.

61.   As such, PLAINTIFF is entitled to a permanent injunction, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

**COUNT II**
**VIOLATION OF 15 U.S.C. § 1114 AGAINST ALL DEFENDANTS**
**(The Shadowhunter Series, Motion Picture, Shadowhunters TV Show,**
**Websites, and Merchandise)**

62.   PLAINTIFF re-alleges each and every allegation set forth above, and incorporates them herein by this reference.

63.   CLARE and the applicable DOE DEFENDANTS' use of the slight variations of the Dark-Hunter Marks ("Shadowhunters" and "Dark Shadowhunters") as the brand in national marketing of the Shadowhunter Series, graphic novels, the Motion Picture, the Shadowhunters

16

TV Show, and on related websites and branded merchandise – all of which features a world strikingly similar to the Dark-Hunter world created by PLAINTIFF – constitutes use of PLAINTIFF's Dark-Hunter Mark in commerce.

64.     Such use creates a false and misleading suggestion that such works originate with, or are sponsored, endorsed or authorized by PLAINTIFF.

65.     DEFENDANTS' selection, incorporation, and use of "Shadowhunters" and "Dark Shadowhunters" as the brand in national marketing of the Shadowhunter Series, graphic novels, the Motion Picture, the Shadowhunters TV Show, and on related websites and branded merchandise was done with full knowledge of PLAINTIFF's registration and prior, extensive use of the Dark-Hunter Marks in connection with the Dark-Hunter Series.

66.     DEFENDANTS' use of "Shadowhunters" and "Dark Shadowhunters" as variations of the Dark-Hunter Marks constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

67.     Upon information and belief, DEFENDANTS' actions were willful, deliberate and designed to trade upon the consumer goodwill enjoyed by PLANTIFF in the science-fiction/urban fantasy genre.

68.     DEFENDANTS' use of "Shadowhunters" and "Dark Shadowhunters" as variations of the Dark-Hunter Marks has caused, and is causing, immediate and irreparable injury to PLAINTIFF and to her goodwill and reputation, and will continue to damage PLAINTIFF and confuse the public unless enjoined by this Court.

69.     As such, PLAINTIFF is entitled to a permanent injunction, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

## COUNT III
### VIOLATION OF 15 U.S.C. § 1125 AGAINST ALL DEFENDANTS
### (The Shadowhunter Series, Motion Picture, Shadowhunters TV Show,
### Websites, and Merchandise)

70.     PLAINTIFF re-alleges each and every allegation set forth above, and incorporates them herein by this reference.

71.     CLARE and the applicable DOE DEFENDANTS' use of the slight variations of the Dark-Hunter Marks ("Shadowhunters" and "Dark Shadowhunters") as the brand in national marketing of the Shadowhunter Series, graphic novels, the Motion Picture, the Shadowhunters TV Show, and on related websites and branded merchandise – all of which features a world strikingly similar to the Dark-Hunter world created by PLAINTIFF – constitutes use of PLAINTIFF's Dark-Hunter Mark in commerce.

72.     Such use creates a false and misleading suggestion that such works originate with, or are sponsored, endorsed or authorized by PLAINTIFF.

73.     DEFENDANTS' unauthorized use of "Shadowhunter" and "Dark-Shadowhunter" as a variation of the Dark-Hunter Marks constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.     Upon information and belief, DEFENDANTS' actions were willful, deliberate and designed to trade upon the consumer goodwill enjoyed by PLANTIFF in the science-fiction/urban fantasy genre.

75.     DEFENDANTS' use of "Shadowhunters" and "Dark Shadowhunters" as variations of the Dark-Hunter Marks has caused, and is causing, immediate and irreparable injury to PLAINTIFF and to her goodwill and reputation, and will continue to damage PLAINTIFF and confuse the public unless enjoined by this Court.

18

76.     As such, PLAINTIFF is entitled to a permanent injunction, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

**COUNT IV**
**CONTRIBUTORY VIOLATION OF  15 U.S.C. §§ 1114 and 1125 AGAINST CLARE**
**(Motion Picture, Shadowhunters TV Show, Websites and Merchandise)**

77.     PLAINTIFF re-alleges each and every allegation set forth above, and incorporates them herein by this reference.

78.     Upon information and believe, CLARE has permitted, authorized and/or contracted with DOE DEFENDANTS (other companies or individuals currently unknown to PLAINTIFF) to use of the slight variations of the Dark-Hunter Marks ("Shadowhunters" and "Dark Shadowhunters") as the brand in national marketing of the Shadowhunter Series, graphic novels, the Motion Picture, the Shadowhunters TV Show, and on related websites and branded merchandise – all of which features a world strikingly similar to the Dark-Hunter world created by PLAINTIFF.

79.     Such use by DOE DEFENDANTS constitutes use of PLAINTIFF's Dark-Hunter Mark in commerce and creates a false and misleading suggestion that such the Motion Picture and the Shadowhunter TV Show originate with, or are sponsored, endorsed or authorized by PLAINTIFF.

80.     CLARE permitted, authorized and/or contracted with DOE DEFENDANTS to engage in such use with full knowledge of PLAINTIFF's registration and prior, extensive use of the Dark-Hunter Marks in connection with the Dark-Hunter Series.

81.     By permitting, authorizing and/or contracting with DOE DEFENDANTS to use the slight variations of the Dark-Hunter Marks ("Shadowhunters" and "Dark Shadowhunters") as

19

described above, CLARE knowingly and intentionally induced and continues to induce the DOE

DEFENDANTS to engage a violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a). CLARE is

contributorily responsible for the infringement by such companies and individuals.

82.     CLARE's infringement has caused, and is causing, immediate and irreparable

injury to PLAINTIFF and to her goodwill and reputation, and will continue to damage

PLAINTIFF and confuse the public unless enjoined by this Court.

83.     As such, PLAINTIFF is entitled to a permanent injunction, as well as all other

remedies available under the Lanham Act, including, but not limited to, compensatory damages,

treble damages, disgorgement of profits, and costs and attorney's fees.

**COUNT V**
**COMMON LAW UNFAIR COMPETITION AGAINST ALL DEFENDANTS**
**(The Shadowhunter Series, Motion Picture, Shadowhunters TV Show,**
**Websites, and Merchandise)**

84.     PLAINTIFF re-alleges each and every allegation set forth above, and incorporates

them herein by this reference.

85.     CLARE and the applicable DOE DEFENDANTS' use of the slight variations of

the Dark-Hunter Marks ("Shadowhunters" and "Dark Shadowhunters") as the brand in national

marketing of the Shadowhunter Series, graphic novels, the Motion Picture, the Shadowhunters

TV Show, and on related websites and branded merchandise – all of which features a world

strikingly similar to the Dark-Hunter world created by PLAINTIFF – constitutes use of

PLAINTIFF's Dark-Hunter Mark in commerce.

86.     Such use creates a false and misleading suggestion that such works originate with,

or are sponsored, endorsed or authorized by PLAINTIFF.

87.     Rather than create an original world in which to place her characters, CLARE

borrowed heavily from the original world created by PLAINTIFF for her Dark-Hunters and other

20

original beings. In order to attract readers, CLARE initially named her protagonists "Darkhunters." While PLAINTIFF demanded that CLARE not use her registered Dark-Hunter Mark, CLARE still chose to use the nearly-synonymous term "Shadowhunters," which comes from the tagline of PLAINTIFF's trademarked series, making it likely that fans of PLAINTIFF would mistake her work as a component of, or somehow affiliated with, the Dark-Hunter Series.

88. DEFENDANTS marketed CLARE's first Shadowhunter Book with a deceptive description, reviews and cover designed to attract PLAINTIFF's readers and established fan base.

89. DEFENDANTS further allowed tens of thousands of copies of her first Shadowhunter Book to be printed and sold with the word "Darkhunter" on the cover.

90. Recently, in connection with the release the Shadowhunters TV Show, DEFENDANTS recently rebranded CLARE's works and marketing materials to feature the term "Shadowhunters," as a trademark use causing renewed confusion between the Shadow Hunter Series and the Dark-Hunter Series.

91. DEFENDANTS took advantage of the Dark-Hunter brand by modeling the components of her series after the Dark-Hunter Series and strategically marketing the Shadowhunter Series to falsely suggest that such works originate with, or are sponsored, endorsed or authorized by PLAINTIFF.

92. Upon information and belief, DEFENDANTS' actions were willful, deliberate and designed specifically to trade upon the consumer goodwill enjoyed by PLANTIFF.

93. PLAINTIFF is entitled to a permanent injunction, as well as all other remedies available under Tennessee law, including but not limited to, compensatory damages; disgorgement of profits; punitive damages; and reasonable costs.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as follows:

A.  That permanent injunctive relief issue restraining DEFENDANTS, their officers, agents, servants, employees, representatives, successors and assigns, attorneys, and all those in active concert or participation with them from:

    i.   Using the Dark-Hunter Marks, visual representations, or any element thereof, or substantially or confusingly similar to, including "Shadowhunter" or "Dark Shadowhunter" that makes DEFENDANTS' use confusingly similar to the Dark-Hunter Marks, in the marketing, promotion, distribution, pubic performance, broadcast, and or sale of any literary work, article of clothing, jewelry, video production, television broadcast, or motion picture in any format, including DVD, Blu-Ray, digital downloads, or streaming services, or any related goods or services; or

    ii.   Infringing the Dark-Hunter Marks or trade dress, unfairly competing with PLAINTIFF, or otherwise injuring PLAINTIFF's business reputation in any manner;

    iii.   Importing infringing products in the United States, as per 15 U.S.C. 1124;

B.  That DEFENDANTS shall destroy all publications, DVDs, DVD covers, posters, software, brochures, labels, signs, or other promotional materials that use the Dark-Hunter Marks, trade dress, or any element thereof, including "Shadowhunter" or "Dark Shadowhunter" that makes DEFENDANTS' use confusingly similar to the Dark-Hunter Marks;

C.  That DEFENDANTS be enjoined from using, and ordered to remove, any uniform

resource locator ("URL" or "web-address"), Twitter handles, Facebook pages, or other online resource that infringes upon PLAINTIFF's marks, including, but not limited to "shadowhunters.com" or "shadowhunter.com" or "shadowhunterstv.com," "@shadowhunterstv," and "facebook.com/shadowhuntersseries,"and other similar websites.

D.  That DEFENDANTS shall pay PLAINTIFF compensatory damages and lost profits in an amount to be determined at trial;

E.  That DEFENDANTS shall pay PLAINTIFF damages, as well as treble damages pursuant to 15 U.S.C. 1117(a) through (d).

F.  That PLAINTIFF be awarded her reasonable attorney fees pursuant to 15 U.S.C. 1117(a);

G.  That PLAINTIFF be awarded her costs in bringing this action;

H.  That PLAINTIFF be awarded all such other and further relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFF hereby demands a jury trial with respect to all issues so triable of right by jury.

Dated:  May 16, 2016.

Respectfully submitted,

FROST BROWN TODD LLC

s/ James E. Mackler
James E. Mackler (BPR 024855)
William L. Campbell, Jr. (BPR 022712)
Tonya J. Austin (BPR 033771)
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
615.251.5550 Telephone
615.251-5551 Facsimile
jmackler@fbtlaw.com
ccampbell@fbtlaw.com
taustin@fbtlaw.com

*Attorneys for Plaintiff Sherrilyn Kenyon*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of May, 2016, a copy of the foregoing First Amended Complaint was served electronically pursuant to the Rules of the United States District Court for the Middle District of Tennessee, to:

John R. Cahill, Esq.
Ron Adelman, Esq.
CAHILL PARTNERS LLP
70 West 40th Street
New York, NY 10018
jcahill@CahillLawFirm.com
radelman@CahillLawFirm.com

Stephen J. Zralek, Esq.
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
szralek@bonelaw.com

*Counsel for Defendant Cassandra Clare*

s/ James E. Mackler

24