**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SHERRILYN KENYON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:16-cv-0191** |
| **v.** | ) | |
| | ) | **Judge Crenshaw** |
| **CASSANDRA CLARE,** | ) | **Magistrate Judge Knowles** |
| **a/k/a JUDITH RUMELT,** | ) | |
| **a/k/a JUDITH LEWIS,** | ) | **JURY DEMAND** |
| | ) | |
| **and** | ) | |
| | ) | |
| **DOES 1 through 50,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

After having five attorneys enter general appearances on her behalf in this Court, propounding three sets of written discovery, issuing a third-party subpoena under the authority of this Court, and asking the Court for affirmative relief, Defendant Cassandra Clare ("Clare") argues that this Court lacks jurisdiction over her. Without question, Clare waived her personal jurisdiction defense. Indeed, under Sixth Circuit law, Clare waived that defense when her counsel entered general appearances on February 19, 2016. For that reason (and others provided below), the Court must deny Defendant's Rule 12(b)(2) motion.

Clare also seeks dismissal of this entire case based ***not*** on the pleadings, as required for Rule 12(b)(6) motions, but on her denials and extrinsic (and largely inadmissible) evidence she seeks to inject into the record. Even though the Court can look only to the pleadings to determine if Plaintiff Sherrilyn Kenyon ("Kenyon") has stated claims upon which relief can be

1

granted, Clare invites the Court to consider only her denials, along with incomplete, unauthenticated "evidence," and rule in her favor on the entire case — before any documents have been exchanged or witnesses have been questioned. Clare apparently realizes this case is not ripe for summary dismissal based on her motion because she served Kenyon with second and third sets of document requests and a second set of interrogatories, as well as a third-party subpoena, *after* filing the instant motion.

As the Court is well aware, Rule 12(b)(6) is not a vehicle to decide the merits of properly pleaded claims, as Clare invites this Court to do. Instead, Rule 12(b)(6) tests only whether, when accepted as true, Kenyon's Amended Complaint states claims upon which relief can be granted. Without question, it does, as explained in greater detail below. Therefore, the Court should deny Clare's Motion to Dismiss.

## II. THIS COURT HAS JURISDICTION OVER DEFENDANT.

### A. Defendant Waived a Personal Jurisdiction Defense.

Clare first argues that this Court does not have jurisdiction over her. Yet, by her own actions in this case, Clare waived that defense. Under the law of this Circuit, the filing of a general appearance reflects the defendant's submission to the jurisdiction of a court. *See Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (holding that "'the requirement of personal jurisdiction flows from the Due Process Clause and protects an individual liberty interest,' 'an individual may submit to the jurisdiction of the court by appearance.' In so doing, a defendant would waive his potential personal jurisdiction defense." (citations omitted)). The *Gerber* court also drew a contrast between a specific appearance for the purpose of contesting personal jurisdiction and a general appearance, finding that the former does not waive the defense, while the latter does. *Id*. at 520.

2

Here, Clare entered a general appearance in the case fourteen days after Kenyon filed the original Complaint. (*See* Doc. No. 3). Through that filing, three attorneys — one local counsel and two *pro hac vice* — entered appearances for Clare without limiting that appearance to the issue of contesting the Court's jurisdiction over Clare. (*Id*.). Under the law of this Circuit, that filing waived Clare's defense of lack of personal jurisdiction. *Gerber*, 649 F.3d at 519; *see also M&C Corp. v. Erwin Behr GmbH & Co., KG*, No. No. 11–2167, 2012 WL 6554683, *3 (6th Cir. Dec. 17, 2012) (holding that the filing of a general appearance waived the defendant's defense of lack of personal jurisdiction). For that reason alone, the Court must deny Clare's motion to dismiss for lack of personal jurisdiction.

Even if the Court does not find that Clare's general appearance waived a personal jurisdiction defense, her other actions demonstrate her willing submission to this Court's jurisdiction. When a defendant engages in conduct concerning the merits of the case, courts have found such conduct constitutes waiver of a challenge to the court's jurisdiction over that defendant. *See King v. Taylor*, 694 F.3d 650, 660 (6th Cir. 2012) (finding waiver of a personal jurisdiction defense based on the defendant's actions in the litigation, including filing a Rule 26(f) discovery schedule, providing Rule 26(a) disclosures and voluntarily participating in discovery on the merits of the case); *Asmar v. Benchmark Literacy Group, Inc.*, No. 04-70711, 2005 WL 2562965, *6 (E.D. Mich. Oct. 11, 2005) (finding waiver based on such actions as propounding discovery on matters other than jurisdiction and participating in conferences with the court); *Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 42 (D. Mass. 2006) (finding that the defendant forfeited a personal jurisdiction defense by its conduct in the litigation, including participating in a scheduling conference, conducting discovery on the merits, entering into a stipulation and protective order with the plaintiff, and moving the court for its out-of-state

3

counsel to appear *pro hac vice*); *National Union Fire Ins. Co. of Pittsburgh, PA v. Keenan*, No. 93 Civ. 6784(LLS), 2005 WL 736233, at *3 (S.D.N.Y. March 31, 2005) (finding that a defendant's conduct, which included issuing a subpoena to a non-party, waived a personal jurisdiction defense).

Clare's conduct in this case completely contradicts her assertion that the exercise of jurisdiction over her person by this Court would violate principles of Due Process. Indeed, Clare has taken the following actions without any mention of, or reservation of, rights concerning her personal jurisdiction defense:[1]

| February 19, 2016 | Files a general Notice of Appearance, wherein one Nashville attorney and two out-of-state attorneys enter appearances. (Doc. No. 3) |
| February 22, 2016 | Two out-of-state attorneys file motions to appear *pro hac vice*. (Doc. Nos. 5 & 7) |
| May 3, 2016 | Serves Rule 26(a) Initial Disclosures. (*See* Declaration of Karen Monti ("Monti Decl."), Exh. 1)[2] |
| May 18, 2016 | Serves written interrogatories and requests for production on Kenyon. (*See* Monti Decl., Exh. 2) |
| June 17, 2016 | Opposes a motion for enlargement of time and asks the Court to order Kenyon to take certain actions. (Doc. No. 37) |
| June 21, 2016 | Two additional Nashville attorneys enter general appearances for Clare. (Doc. No. 39) |
| June 30, 2016 | Utilizes the subpoena power of this Court by issuing a non-party subpoena. (*See* Monti Decl., Exh. 3) |

---

[1] This list does not include actions such as several joint filings that concerned ministerial actions like a substituted summons, waiving service, a request to appear telephonically, and deadlines. (*See* Doc. Nos. 4, 12, 13, 31 & 33)

[2] The Declaration of Karen B. Monti will be filed contemporaneously with this Response.

4

| June 30, 2016 | Propounds a second set of requests for production on Kenyon. (*See* Monti Decl., Exh. 4). |
| June 30, 2016 | Clare prepares and proposes a joint protective order that will govern information and documents exchanged during discovery. (See Monti Decl. Exh. 15) |
| July 8, 2016 | Propounds a second set of interrogatories and third set of requests for production on Kenyon. (*See* Monti Decl, Exh. 5). |

Without question, Clare's actions evidence her consent to the jurisdiction of this Court. Indeed, Clare has even embraced the power of this Court by issuing a subpoena. Clare's actions waive her personal jurisdiction defense. *King*, 694 F.3d at 660; *Asmar*, 2005 WL 2562965 at *6; *Plunkett,* 409 F.Supp.2d at 42; *Keenan*, 2005 WL 736233 at *3. Accordingly, the Court should deny Clare's Rule 12(b)(2) motion.

**B.      Defendant's Contacts with this Forum Are Sufficient to Establish Personal Jurisdiction.**

1.      <u>Personal jurisdiction overview</u>.

Even if Clare has not waived a defense of lack of personal jurisdiction (she has), her Rule 12(b)(2) motion to dismiss still fails. "Personal jurisdiction may be found either generally or specifically. General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant. Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678-79 (6th Cir. 2012) (citations omitted). "Specific jurisdiction arises only when the plaintiff establishes that 1) the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state, 2) the cause of action arose from the defendant's activities in the forum state, and 3) the acts of

5

the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable." *First Tennessee Nat. Corp. v Horizon Nat. Bank*, 225 F. Supp. 2d 816, 820 (W.D. Tenn. 2002) (citations omitted).

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State, and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.' Courts require purposeful availment to insure that 'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Circ. 1996) (citations omitted); *see also CJ Advertising, LLC v. Whitehardt, Inc.*, No. 3:10-0214, 2010 WL 3260068, *4 (M.D. Tenn. Aug. 18, 2010) ("Purposeful availment is 'something akin to a deliberate undertaking,' that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum." (*quoting Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003)).

"In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of deciding the motion, or (3) conduct an evidentiary hearing on the merits of the motion to resolve any apparent factual questions." *One Media IP Ltd. v. S.A.A.R. SrL*, No. 3:14-cv-0957, 2015 WL 328374, *3 (M.D. Tenn. Jan. 23, 2015) (*citing Dean v. Motel 6 Operating, LP*, 134 F.3d 1239, 1272 (6th Cir. 1998)).

Clare's Rule 12(b)(2) motion asks the Court to disbelieve Kenyon's allegations based on Clare's denials and declaration. Clare does not seek an evidentiary hearing wherein both sides could present evidence concerning Clare's contacts with this forum, instead relying only on her

declaration. "When, . . . , 'a district court rules on a jurisdictional motion to dismiss made pursuant to [Rule 12(b)(2)] without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the [nonmoving party . . .].' 'To defeat such a motion, [plaintiffs] need only make a prima facie showing of jurisdiction.' In deciding a motion under Rule 12(b)(2), this court 'will construe the facts in the light most favorable to the nonmoving party.'" *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499 (6th Cir. 2014) (citation omitted). Indeed, this Court cannot simply accept Clare's declaration concerning contacts with this forum without also conducting an evidentiary hearing on the issue. *CompuServe*, 89 F.3d a 1263; *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (finding that the trial court erred by comparing only the defendant's affidavit to the allegations in the complaint without allowing the plaintiff with the opportunity to develop and presenting contrary evidence about contacts with the forum). As explained below, Kenyon's supported allegations concerning Clare's contacts with Tennessee establish personal jurisdiction, eliminating the need for an evidentiary hearing.

       2.   <u>Clare's temporal argument is inapplicable here.</u>

Clare's argument that the Court can only consider contacts with Tennessee during the limitations period is flawed. The sole case cited by Clare for the proposition is *Skidmore v. Led Zepplin*, 106 F. Supp. 3d 581 (E.D. Pa. 2015). There, the trial court analyzed both general and specific jurisdiction. *Id*. at 585-86. When analyzing whether the defendant's contacts with Pennsylvania were "continuous and systematic" — the analysis needed for general jurisdiction — the *Skidmore* court held: "[o]nly contacts occurring within a reasonable period of time prior to the filing of this action are relevant to this Court's **general jurisdiction** inquiry." *Id*. at 587 (emphasis added). The *Skidmore* court based its analysis on *Johnson v. Woodcock*, 444 F.3d 953

(8th Cir. 2006). That court did not look only to the limitations period when analyzing the minimum contacts, but instead analyzed contacts that occurred "within the relevant time frame" as part of a general jurisdiction analysis. *Johnson*, 444 F.3d at 956.[3]

> 3. <u>Clare's contacts with this forum are sufficient to establish specific personal jurisdiction</u>.

Regardless of Clare's misplaced arguments, Kenyon's allegations and evidence establish that this Court has specific personal jurisdiction over Clare due to her contacts with this state during the time period described in the Amended Complaint. Indeed, Clare's recent contacts alone establish jurisdiction. Kenyon alleges that Clare "entered into contracts with Tennessee vendors for the promotion of her infringing works." (Doc. No. 30 ¶ 5). In response, Clare testified under oath: "I have no contracts with anyone who, to my knowledge, is a 'Tennessee

---

[3] The *Johnson* court observed:

> Few cases discuss explicitly the appropriate time period for assessing whether a defendant's contacts with the forum state are sufficiently "continuous and systematic" for the purposes of general jurisdiction. However, our review of general jurisdiction cases reveals that contacts are commonly assessed over a period of years prior to the plaintiff's filing of the complaint. For example, in *Helicopteros,* 466 U.S. at 409–11, 104 S. Ct. at 1868–71, the Supreme Court examined the defendant's contacts with the forum state over a seven-year period to determine whether it met the "continuous and systematic" minimum contacts test. Likewise, other circuits have examined minimum contacts over a reasonable period of years in general jurisdiction cases, *see Wilson v. Belin,* 20 F.3d 644, 650–51 (5th Cir.) (examining defendant's contacts with forum state over five-year period in assessing minimum contacts for general jurisdiction purposes), *cert. denied,* 513 U.S. 930, 115 S. Ct. 322, 130 L.Ed.2d 282 (1994); *Bearry,* 818 F.2d at 372, 376 (analyzing defendant's contacts with forum state over five-year period in general jurisdiction case); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1329, 1330–31 (9th Cir.1984) (examining defendant's contacts over three-year period in connection with general jurisdiction inquiry). Finally, our own circuit has suggested in *dictum* that examining a defendant's contacts over a period of several years is appropriate when applying the "continuous and systematic" standard, *Braman v. Mary Hitchcock Memorial Hosp.,* 631 F.2d 6, 9 (2d Cir.1980) (implying that defendant's contacts with the forum state over five-year period relevant to minimum contacts inquiry).

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (further observing: "The minimum contacts inquiry is fact-intensive, and the appropriate period for evaluating a defendant's contacts will vary in individual cases."). Simply put, there is no bright-line temporal rule for analyzing a defendant's contacts with the forum to find jurisdiction.

vendor' concerning my works" since 2012.[4]  (Doc. No. 42 ¶ 2).  At best, Clare suffers from convenient memory loss concerning her numerous business dealings with a Tennessee company over the past three years; at worst, her testimony is false.

Clare admits she visits locations for fan appearances.  (*Id.*).  To do that, Clare travels on a tour bus.  In 2013, Clare toured in a bus acquired (likely via lease) from Premiere Transportation of Franklin, Tennessee.  (*See* Monti Decl., Exh. 11).  Indeed, that Premiere bus bore her name on the side and had "Book Tour 2013" painted on the front.  (*Id.*).  Clare subsequently obtained a different tour bus from Premiere Transportation, this one bearing her name on the side and term "Shadowhunters."  (*See id.*, Exh. 12).  Indeed, Clare provided a reporter with a tour of her bus, which tour was videotaped and posted on youtube.com a mere ***four months ago***.[5]  (*See* https://www.youtube.com/watch?v=ND1JGOvGfYA).  In other words, Clare recently contracted with a Tennessee company to provide a bus to help her promote the infringing works.

Moreover, it appears that Clare used the services of another Franklin-based company, Premiere Marketing, Inc. d/b/a Premiere Collectibles ("Premiere Collectibles").  (*See* Declaration of Sherrilyn Kenyon ("Kenyon Decl.") ¶¶ 3, 5-7).[6]  That company contracts with authors and/or their publishers to provide autographed copies of books.  (*Id.* ¶ 3).  Evidence

---

[4] Clare's declaration appears to concede that she traveled to Tennessee to promote her books, but just not more recently than 2012.  Similarly, Clare filed copies of highly redacted contracts, purportedly to show that the Court that her publisher was not ***required*** to sell her books in Tennessee.  Yet, Clare's individual deliberate contacts with Tennessee — including her repeated business in Tennessee to lease a tour bus to promote the infringing works — and her interactive website, www.shadowhunters.com, showed purposeful availment without the need to explore the content of the remainder of the Simon & Shuster contract or other agreements at this juncture.

[5] The Court can take judicial notice of the contents of websites for the purpose of determining personal jurisdiction.  *Stone v. Twiddy & Co. of Duck, Inc.*, No. 1:10CV591, 2012 WL 3064103, *4 (S.D. Ohio July 27, 2012); *West Marine, Inc. v. Watercraft Superstore, Inc.*, No. C11-04459 HRL, 2012 WL 479877, *10 (N.D. Cal. Feb. 14, 2012).

[6] The Declaration of Sherrilyn Kenyon will be filed contemporaneously with this Response.

suggests that Clare contracted with Premiere Collectibles, including promotion of one of the "Shadowhunters" books. (Kenyon Decl. ¶ 7; Monti Decl. Exh. 13).[7]

Clare's "deliberate effort . . . to direct [her] activities" to this forum is sufficient to establish this Court's specific personal jurisdiction over her. *Bridgeport Music*, 327 F.3d at 478; *CJ Advertising, LLC v. Whitehardt, Inc.*, 2010 WL 3260068 at *4. Without question, those contacts "arise from" and have "substantial enough connection with [Tennessee] state to make the exercise of jurisdiction reasonable." *First Tennessee*, 225 F. Supp. 2d at 820.

Clare also asserts that her publisher (Simon & Shuster) "operates" www.shadowhunters.com.[8] (Doc. No. 42 ¶ 4). As set forth in the Amended Complaint, Clare's "Shadowhunters" series infringes Kenyon's trademarks and causes confusion in the marketplace. (Doc. No. 30). The www.shadowhunters.com website allows users to (1) download copies of Clare's works; (2) subscribe to Clare's "author alert"; (3) interact with Clare through an imbedded Twitter feed; and (4) download "shadowhunters" apps. (*See* www.shadowhunters.com). Whether Simon & Shuster hosts (or "operates") the website is immaterial. *Kroger Co. v. Dombos*, 408 F.2d 813, 816 (6th Cir. 1969) (finding that the actions of the agent can establish sufficient contacts of the principal to the forum state). The website is titled "Cassandra Clare's Shadowhunters" and allows individuals in Tennessee to use its interactive features to receive communications and other things from Clare, thereby establishing that Clare has purposefully availed herself of the privilege of doing business in Tennessee. *First Tennessee*, 225 F. Supp. 2d at 821 (finding that, even without evidence of Tennessee customers,

---

[7] Kenyon issued subpoenas to Premiere Transportation and Premiere Collectibles on June 28, 2016 seeking documentation regarding Clare's engagement of their services in Tennessee. (Monti Decl. Exhs. 8, 9, 10).

[8] Clare's effort to deflect the "Cassandra Clare Shadowhunters" website to her publisher, Simon & Shuster, is ironic. In response to a subpoena to Simon & Shuster, that company responded to document requests, inter alia, that Kenyon should obtain records from Clare. (*See* Monti Decl., Exhs. 7 & 14).

a bank's interactive website established specific jurisdiction because Tennessee customers could use the website to sign up for alerts and interact with bank loan officers concerning potential loans). Given that the website promotes the infringing works and uses infringing marks, its connections to Tennessee certainly "arise from" and has "substantial enough connection with [Tennessee] state to make the exercise of jurisdiction reasonable."[9] *Id*. at 820.

Finally, Kenyon has propounded written discovery to Clare, some of which relates to her contacts with Tennessee companies and individuals. (*See* Monti Decl., Exh. 6, *e.g.* Req. Nos. 5-7). Clare has not yet produced responsive documents because of mutual extensions of time for production. Moreover, Premiere Transportation and Premiere Collectibles, both of Franklin, Tennessee, as well as Simon & Shuster, have not yet produced records responsive to their respective subpoenas. Therefore, even if Clare has not waived jurisdiction (she has) and Kenyon has not proffered allegations and evidence of Clare's contacts with this jurisdiction sufficient to defeat Clare's motion (she has), the Court can hold Clare's Rule 12(b)(2) motion in abeyance until the discovery concerning Clare's contacts is completed. *One Media*, 2015 WL 328374 at *3.

### III.  THE RULE 12(b)(6) STANDARD AND THE RECORD BEFORE THE COURT

While Clare's Motion generally acknowledges the applicable standard and analysis required for Rule 12(b)(6) motions, her argument and analysis completely ignore that standard. Instead, Clare invites the Court to (1) accept her denials as true, (2) consider extrinsic evidence only offered by Clare; and (3) draw numerous inferences in her favor from those denials and that "evidence." Yet, when the correct standard is applied and the Court limits its review to the pleadings, the Court must deny Clare's motion.

---

[9]  Clare's former website, www.mortalinstruments.com, automatically redirects web users to Clare's "Shadowhunters" website.

**A.** **The Court Must Accept Kenyon's Allegations as True.**

As Clare acknowledges in her Memorandum, the Rule 12(b)(6) standard requires (1) Kenyon's non-conclusory, factual allegations must be accepted as true; and (2) the Court draw all reasonable inferences in Kenyon's favor that Clare "is liable for the misconduct alleged." *Chambers v. HSBC Bank USA, NA*, 796 F.3d 560, 567 (6th Cir. 2015). Kenyon's specific allegations are discussed in Part III.C, *infra*.

However, because the Court *must* accept as true Kenyon's allegations, it cannot consider the numerous denials in Clare's declaration, Clare's explanations of events, or the unauthenticated exhibits to the Memorandum. Indeed, in addition to her denials relating to the issue of personal jurisdiction, Clare's memorandum denies Kenyon's allegations repeatedly and asks the Court to accept those denials as true. (*See* Doc. No. 42 ¶¶ 5-11). Moreover, Clare's declaration likewise contains numerous denials, which Clare presumably expects the Court to accept as true, along with her own narrative of events. (Doc. No. 42). In sum, Clare's self-serving Memorandum and declaration completely ignore the procedure this Court must use to decide a Rule 12(b)(6) motion. As a matter of law, the Court cannot consider those denials. As the Sixth Circuit held, "The district court's construction of Fed. R. Civ. P. 12(b)(6)—crediting the defendant's, rather than the plaintiff's version of facts—unduly raises the pleading standard beyond the heightened level of *Iqbal* and *Twombly,* forcing the plaintiff's well-pleaded facts to be not only plausible, but persuasive. That is not the appropriate burden at this stage of the litigation."[10] *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396,

_____

[10] Of course (and somewhat ironically), if the Court considers all of Clare's evidence extrinsic to the pleadings and converts Clare's Rule 12(b)(6) motion to a summary judgment motion under Rule 56 (which allows the Court to consider the pleadings and other evidence), Clare's repeated denials of factual allegations merely create disputed facts, thereby preventing entry of summary judgment. If the Court contemplates converting Clare's motion into a summary judgment motion, it must notify the parties and allow for a sufficient record to be created to decide the claims under the Rule 56 standard. Fed. R. Civ. P.

12

400 (6th Cir. 2012) (reversing decision by district court that considered the defendant's characterization of events and documents in granting a motion to dismiss).

## B. The Court Cannot Consider Clare's Denials or the Extrinsic Evidence She Seeks to Inject Into the Record.

Clare asks this Court to dismiss Kenyon's claims by accepting as true the content of at least fifteen documents,[11] quotes from websites and her denials. Yet, using a proper Rule 12(b)(6) analysis, the Court is limited to the allegations in the pleadings. Clare justifies her request that this Court consider extrinsic evidence by citing *Commercial Money Ctr., Inc. v. Illinois Union Ins., Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) for the proposition that the Court can consider a document referred to in the pleadings without converting a Rule 12(b)(6) motion to a summary judgment motion.

*Commercial Money* simply stated that "documents ***attached*** to the pleadings become part of the pleadings and may be considered on a motion to dismiss. Fed. R. Civ. P. 10(c). In addition, when a document is referred to in the pleadings and is ***integral to the claims***, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* (emphasis added).

The exhibits attached to the Amended Complaint are limited to lists of the works and registrations of Kenyon's intellectual property. Clare does not even attempt to show that the voluminous extrinsic evidence — consisting of numerous factual assertions and fifteen unauthenticated exhibits — she seeks to inject into the record are referenced in the Amended

---

12(d). Given that discovery is underway, conversion is unnecessary; the parties can present Rule 56 motions at the conclusion of discovery, as contemplated by the Court's current schedule. (*See* Doc. No. 16).

[11] Those documents include numerous website screenshots, copies of book covers, a list of other works that purportedly show the use of the word "hunter," and Clare's declaration wherein she recounts conversations with other individuals. None of the documents Clare seeks to inject into the record are properly authenticated and, standing alone, are hearsay.

13

Complaint or integral to Kenyon's claims. Indeed, Clare cannot do so, but instead is asking the Court to ignore the confines of the Rule 12(b)(6) analysis and make an exception for Clare simply because she disputes Kenyon's allegations. This contortion of what can be considered by the Court finds no support in the law. *Mediacom*, 672 F.3d at 400 (reversing district court's acceptance of a defendant's characterization of events and documents that were not part of the pleadings); *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (reversing dismissal when district improperly relied on a document outside the pleadings). Moreover, for documents not attached to or expressly referenced in a complaint, if a dispute exists (as it does here) concerning the relevance, authenticity and general admissibility, the Court cannot consider those documents. *Mediacom*, 672 F.3d at 400.

In sum, the Court's analysis is limited to the Amended Complaint and documents specifically referenced therein and integral to the claims. Therefore, in ruling on Clare's Rule 12(b)(6) motion, the Court ***cannot*** consider: (1) Exhibits A-O to Clare's Motion (Doc. Nos. 41-A – 41-O); (2) the letters and websites quoted on pages 10 and 11 of Clare's Memorandum; (3) paragraphs 5-11 from Clare's declaration (Doc. No. 42); or (4) the (often unsupported) denials scattered throughout Clare's Memorandum (Doc. No. 43).

## C. The Allegations in the Amended Complaint State Claims Upon Which Relief Can Be Granted.

Putting aside the voluminous information Clare would have the Court consider, but which the Court must ignore, the focus returns to what the Court can review — the Amended Complaint. With the Amended Complaint (and its two exhibits that list works and registration numbers) as the only documents properly before the Court, attention turns to Clare's attack of Kenyon's claims. Before addressing those arguments, a review of Kenyon's allegations is in order.

14

1.      <u>Kenyon's Amended Complaint states claims upon which relief can be granted</u>.

The Amended Complaint sets forth in great detail the factual allegations upon which Kenyon bases her claims.  The following brief summary of those allegations tells the story.  Through her successful Dark-Hunter Series of books, Kenyon developed a worldwide fan base.  (Doc. No. 30 ¶ 7).  Through that series, Kenyon created fictional universe that revolved around group of elite warriors who fight demons and other supernatural beings who prey on humans.  (*Id*. ¶ 44).  The Dark-Hunter Series became synonymous with certain marks and symbols Kenyon created and was followed by merchandise, websites, promotional videos and commercials.  (*Id*. ¶¶ 8-14).  To protect her intellectual property, Kenyon registered a family of marks that have also acquired secondary meaning as indicative of Kenyon's works and the associated products.  (*Id*. ¶ 8).

Marketing to the same demographic of readers, Clare began writing a series of books in or about 2006 that had "Darkhunters" as a group of characters and also involved story lines and characters similar to the world created by Kenyon previously.  (*Id*. ¶ 15).  After Kenyon complained, Clare ultimately agreed to refrain from using the name "Darkhunters."  (*Id*. ¶¶ 16-17).  Kenyon also received assurance that Clare's transition to the substantially similar term of "Shadowhunters" for her group of warriors would be limited to the name of her protagonists in the books and not be expanded to use for branding or as a mark or brand for Clare's books series.  (*Id*. ¶ 18).  Despite those assurances, one of Clare's books was printed with "Darkhunters" displayed on the cover, resulting in the sale of thousands of those books and a surge of popularity for Clare's books.[12]  (*Id*. ¶¶ 29-38).

---

[12] While this example has been explained as a "mistake by the publisher" in Clare's response, that admitted use of the term "Dark-Hunters" instead of "Shadowhunters" on the cover of a Clare novel indicates how confusingly similar the two marks are — even Clare's own publisher was confused.

15

For a period of time after providing assurances to Kenyon and publication of the misprinted books, Clare referred to her books as "The Mortal Instruments." (*Id*. ¶ 17). Even with that title, those books used many of the themes, storylines and characters found in Kenyon's works. (*Id*. ¶ 44-48). Yet, in or after 2013 (and consistently since then) Clare began marketing the books in her "Mortal Instruments" series as a "Shadowhunter" novel, rebranded her other series (Infernal Devices and Dark Artifices) under the umbrella of "Shadowhunters," and expanded that use into television, movies and websites. (*Id*. ¶ 21-26). Indeed, Clare is credited as a writer for the television series "Shadowhunters: The Mortal Instruments" in 2015. (*Id*. ¶ 22). As a result of Clare's actions, consumer confusion exists between Kenyon's "Dark-Hunters" books and Kenyon's "Shadowhunters" products. (*Id*. ¶ 39-51).

Based on those facts and others set forth in the Amended Complaint, Kenyon asserts five causes of action against Clare, each of which will be addressed in turn: (1) violation of 15 U.S.C. § 1114 (relating to use of "Dark-Hunter" on cover of books); (2) violation of 15 U.S.C. § 1114 (relating to Shadowhunters books, movie, television show, websites and merchandize); (3) violation of 15 U.S.C. § 1125 (unfair competition and false designation); (4) contributory violation of 15 U.S.C. §§1114 & 1125; and (5) common law unfair competition. Clare's specific legal challenges to the first three claims will be addressed *infra* at Part C.2.

A)  Kenyon pleaded claims for trademark infringement and unfair competition under the Lanham Act (Counts I, II & III).

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). Kenyon pleaded ownership of the marks (and registration thereof), use by Clare in commerce

and repeated examples of consumer confusion (not to mention confusion by Clare's own publisher). (*See* Doc. No. 30 ¶¶ 8, 17, 29-32, 34, 36-51, 54-60, 63-68, 71-75). Those pleadings were not conclusory assertions, but rather provided specific factual allegations sufficient to state a claim.

The Lanham Act also imposes liability on "[a]ny person who, on or in connection with any goods or services ... uses in commerce ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin ... of his or her goods, services, or commercial activities." *Chain v. Tropodyne Corp.*, 225 F.3d 659, *3 (6th Cir. 2000) (citing 15 U.S.C. § 1125(a)(1)(A).). As explained above, Kenyon pleaded facts to establish a claim under Section 1125. (*See* Doc. No. 30 ¶¶ 19, 41-48, 71-75).

Clare argues that Kenyon's claim for unfair competition under the Lanham Act is duplicative of her claim for trademark infringement. (Doc. No. 43 at 23-24). As the elements and allegations set forth above demonstrate, those claims are not duplicative. Clare also jabs at the term "unfair competition" as used in conjunction with the Lanham Act, while also acknowledging that said term is "shorthand" for a Section 1125 claim. (*Id*.). Clare's semantics issues aside, Kenyon stated a claim for violation of 15 U.S.C. § 1125 of the Lanham Act.

B)    Kenyon pleaded a claim for contributory infringement.

Clare presents a confusing argument in support of her request to dismiss the contributory infringement claim. Clare first argues that if direct infringement is not established, contributory infringement cannot be shown. (Doc. No. 43 at 24). As explained above, Kenyon has pleaded a claim for direct infringement. (*See* Part C.1.A, *supra*). Next, Clare argues that other parties are not named defendants, thus the contributory infringement claim fails. Her argument against

17

Kenyon's contributory infringement claim (Count IV) actually confuses the allegations. Clare appears to be believe that Kenyon asserts that unnamed parties contributed to Clare's infringement. In fact, Kenyon asserts the opposite; Clare contributed to the infringing conduct of others. (Doc. No. 30 ¶¶ 78-82).

Contributory infringement under the Lanham Act occurs when a party "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, . . ." *Goodfellow*, 717 F.3d at 503 (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, (1982)). Kenyon alleges that Clare contributed as a writer, via contract and potentially otherwise to the use of "Shadowhunters" by others — including those parties involved in the infringement found in the Shadowhunters TV show and Motion Picture — which Kenyon alleges constitutes infringement of her marks. (Doc. No. 30 ¶¶ 21-26, 78-82). Accordingly, Clare has stated a claim against Clare for contributory infringement. The Court should deny Clare's request that the contributory infringement claim (Count IV) be dismissed.[13]

    C) <u>Kenyon pleaded a claim for common law unfair competition</u>.

Finally, Clare attacks Kenyon's claim for common law unfair competition. (Doc. No. 43 at 25). Clare does not argue that Kenyon fails to plead facts to support this claim. Instead, Clare

---

[13] In a contributory infringement claim, a plaintiff is not required to name a direct infringer as a party, so long as direct infringement is alleged in the complaint. *See Gordon v. Nextel Communications and Mullen Advertising, Inc.*, 345 F.3d 922, 926 (6th Cir. 2003) (in intellectual property infringement action, finding that plaintiff's failure to name the direct infringer in the lawsuit was not fatal to plaintiff's secondary infringement claim); *see also Slep–Tone Entm't Corp. v. Il Mio Sogno, LLC,* No. 8:12–cv–1187–T–30, 2012 WL 3156582, at *1 (M.D. Fla. Aug. 3, 2012) (finding that it was "immaterial whether the [direct infringers] are named in the complaint" alleging contributory trademark infringement because the complaint properly alleged that defendant was aware of the unlawful activity); *Slep-Tone Entertainment Corporation v. Elwood Enterprises, Inc.*, 2014 WL 1612891, at *6 (N.D. Ill. 2014) (same; holding that it was not necessary for the direct infringers to be joined for the action to proceed).

18

bases this argument on Kenyon's use of the phrase "substantial consumer confusion" as opposed to "actual confusion." (*Id.*). Candidly, this makes no sense. The addition of the adjective "substantial" does not mean Kenyon does not allege confusion; indeed, Kenyon alleges confusion that was substantial in nature.[14] (Doc. No. 30 ¶¶ 41-). Clare also makes a passing argument that Kenyon's state unfair competition claim is time-barred. Yet, as with the other claims, Clare's continuing conduct within one year of filing suit provides new actionable conduct within the limitations period. (*See* Part 2.A., *infra*). The Court should deny Kenyon's request to dismiss Clare's state law unfair competition claim.

      2.    <u>Kenyon's Lanham Act claims survive Clare's challenges</u>.

In addition to the arguments set forth above, Clare also presents two specific legal arguments against Kenyon's Lanham Act claims, both of which arguments fail.

      A)    <u>The defense of laches does not justify dismissal of Kenyon's claims</u>.

Clare argues that Kenyon's Lanham Act claims (Counts I-III) are barred by the defense of laches.[15] When deciding whether a suit is barred under the doctrine of laches, a court analyzes "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay." *Audi AG v. D'Amato*, 469 F.3d 534, 545-46 (6th Cir. 2006). Under the Lanham Act case law, a laches defense is not an absolute

---

[14] Indeed, Kenyon's use of that phrase places her in good company given that courts use the term "substantial consumer confusion" in the context of Lanham Act claims. *United Indust. Corp. v. Clorox Co.*, 140 F.3d 1175, 1182 (8th Cir. 1998); *Novartis Consumer Health, Inc. v. Johnson & Johnson – Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 594 (3d Cir. 2002). Semantics aside, the element of Lanham Act claims involves only "likelihood of confusion." *See Goodfellow*, 717 F.3d at 502; *Chain*, 225 F.3d 659 at *3.

[15] As before, Clare does not cite for the Court cases that dismissed claims based on a laches defense following a Rule 12(b)(6) motion. Instead, the cases she cites were decided on summary judgment or trial, which make sense given the fact-intensive nature of the elements of a laches defense.

bar, but instead merely creates a rebuttable presumption that claims based on conduct outside limitations periods are time-barred.[16] *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002).

Clare's laches argument faces three insurmountable problems. First, the very elements of that defense require a determination of factual issues — knowledge, inexcusable or unreasonable delay, and prejudice — that are not properly decided under a Rule 12(b)(6) standard. *See, e.g., Federal Express Corp. v. U.S. Mail Serv.*, 75 F. Supp. 2d 807, 814 (W.D. Tenn. 1999) ("As evaluation of a claim of laches is dependent upon the submission of evidence, Fed. R. Civ. P. 12(b)(6) is not the proper vehicle for bringing such a request. The proper manner to bring a claim of laches before the court, at least before trial, is by a motion for summary judgment . . ."). Indeed, Kenyon has asserted that Clare and her agents provided assurances about how "Shadowhunters" would be used, but then progressively expanded that use in recent years. (Doc. No. 30 ¶¶ 18-28). A trier of fact could find those assurances and then the progressive expansion of use to be an excusable reason for Kenyon not suing Clare sooner. Second, without explaining precisely how, Clare asks the Court to presume unfair prejudice to Clare. Of course, the Court cannot do so without going outside of Kenyon's Amended Complaint.

Second, Clare's laches defense completely ignores that Kenyon has alleged infringing conduct within the limitations period, some of which occurred as recently as late 2015. (*See, e.g.*, Doc. No. 30 ¶¶ 24-27). As Clare observes in her Memorandum, if the claims are brought within the limitation period, a laches defense cannot prevail. (Doc. No. 43 at 18). Clare's use of "Shadowhunters" as her brand in and around 2015 certainly occurred within the three years preceding this lawsuit. Because Clare's claims are based on actions within the comparable

---

[16] Clare seeks dismissal of all of Kenyon's claims, yet a laches defense can only impact a claim for monetary damages, as Clare acknowledges in her Memorandum (*see* Doc. No. 43 at 18), and is not a bar to injunctive relief. Kenyon seeks both in this case. (*See* Doc. No. 30 at 22).

limitations periods, laches does not create any presumption that Kenyon's claims are time-barred.

Finally, Clare appears to argue that Kenyon cannot rebut any presumption based on laches with a progressive encroachment argument — which is a plaintiff's response to a laches defense. (Doc. No. 43 at 20). This argument fails for two reasons. First, in essence, Clare invites this Court to adopt her laches defense, thereby adopting a presumption that Kenyon's claims are time-barred, then ignore the factual issues that may rebut any presumption through Clare's progressive encroachment of Kenyon's marks. Such an analysis takes the Court far afield from the proper 12(b)(6) standard: whether Kenyon's Amended Complaint states claims upon which relief can be granted.

Moreover, Clare's characterization of the doctrine of progressive encroachment is inaccurate. Clare argues that if two marks are used in the same field of commerce, the analysis ends there. (Doc. No. 43 at 20). The issue is not that simple. Instead, progressive encroachment — which, again, is a response to a laches defense — "requires something about the defendant's use of the mark to have changed significantly." *Nartron Corp.*, 305 F.3d at 410 (citing *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562 (6th Cir. 2000), a case cited in Clare's Memorandum). Here, Kenyon alleges that Clare changed her use of "Shadowhunters" in a way that infringed Kenyon's rights. (Doc. No. 30 ¶ 19-28). Accepting Kenyon's allegations as true, the Court cannot adopt wholesale any presumption created by Clare's assertion of laches and dismiss Kenyon's claims.

B) The issue of consumer confusion inherently involves matters outside the pleadings.

Next, Clare attacks one element of Kenyon's Lanham Act claims by arguing that "[t]here is no confusion between 'Shadowhunters' and 'Dark-Hunter'." Clare first argues that confusion is "inconceivable" because the author's names are on the covers. To support this argument,

21

Clare relies not on cases that dismissed claims at the initial pleading phase based on a finding of "no confusion," but instead on two federal appellate cases that involved reviews of summary judgment rulings, not Rule 12(b)(6) rulings. *See General Motors Corp. v. Keystone Automotive Indus.*, 453 F.3d 351 (6th Cir. 2006); *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000). Indeed, the *General Motors* court reversed summary judgment and remanded because issues relating to likelihood of confusion involved potentially disputed facts. 453 F.3d at 360. Kenyon pleaded facts to satisfy the "consumer confusion" prong of her Lanham Act claims. (Doc. No. 30 ¶¶ 34-51, 56, 68, 75).

Second, Clare argues that Kenyon is actually seeking damages for use of the term "hunter," which, according to Clare, she cannot do.[17] To support this argument, Clare cites a Restatement comment, dictionary definitions and an Arkansas district court opinion that followed a trial on the merits. *See Arkansas Trophy Hunters Ass'n v. Texas Trophy Hunters Ass'n, Ltd.*, 506 F. Supp. 2d 277 (W.D. Ark. 2007). By presenting this argument, Clare would have this Court accept her characterization of Kenyon's claims, ignore the proper eight-factor factual determination (explained *infra*) and decide that consumer confusion is impossible. Kenyon's claims are based, in part, on Clare's change from using "Shadowhunters" as a term in her books to describe certain group of characters to branding her entire series as "Shadowhunters" books. (Doc. No. 30 ¶ 27).

Kenyon's allegations establish a cognizable claim. *See Independent Nail & Packaging Co. v. Stronghold Screw Products, Inc.*, 205 F.3d 921, 927 (7th Cir. 1953) (finding that a change in the use of a product name by defendant even after competing with the plaintiff for a number of

---

[17] In support of this argument, Clare asks the Court to consider and accept as true a list of book titles, without explaining where the list originated or authenticating its content in any way. (*See* Doc. No. 43 at 22). As explained above, the Court cannot consider such evidence.

22

years can constitute trademark infringement based on the new use).  Indeed, "[t]he strength of a mark is a factual determination."  *Audi AG v. D'Amato*, 469 F.3d 534, 543 (6th Cir. 2006).

Third, Clare argues that the works "Shadowhunters" and "Dark-Hunters" are "not confusingly similar."  (Doc. No. 43 at 23).  To support this argument, Clare again provides no cases that made such a finding on a Rule 12(b)(6) motion, but instead involved summary judgment or trial rulings.  *See AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004) (reviewing summary judgment ruling); *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568 (6th Cir. 1987) (reviewing trial ruling); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1993) (reviewing trial ruling); *Gruner & Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) (reviewing trial ruling); *ePrize v. NetPrize, Inc*., 2006 WL 3690921 (E.D. Mich. Dec. 12, 2006) (denying entry of a preliminary injunction following an evidentiary hearing).

Clare's entire "no consumer confusion" argument ignores two important legal frameworks.  First, "[t]he determination of whether a likelihood of confusion exists is a mixed question of fact and law."  *Therma-Scan, Inc. v. Thermascan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002) (citation omitted) (deciding claims under 15 U.S.C. §§ 1114 & 1125).  Second, the Sixth Circuit "has identified eight factors that are relevant in determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark, (2) the relatedness of the goods or services offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any evidence of actual confusion, (5) the marketing channels used by the parties, (6) the probable degree of purchaser care and sophistication, (7) the defendant's intent in selecting its mark, and (8) the likelihood of either party expanding its product line using the marks."  *Id*.  Clare ignores those factors.  In fact, Kenyon pleaded facts that touch on each of those factors.  (*See* Doc. No.

30 ¶¶ 7-11, 19-28, 41-51).  Moreover, Kenyon pleaded specific instances of consumer confusion and also alleged broader confusion.[18]  (*See, e.g., id*. ¶¶ 36, 39 & 40).  Accepting those allegations as true, Kenyon has alleged sufficiently the consumer confusion element of her Lanham Act claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

Respectfully submitted,
FROST BROWN TODD LLC


s/ William L. Campbell, Jr.
James E. Mackler (BPR 024855)
William L. Campbell, Jr. (BPR 022712)
Tonya J. Austin (BPR 033771)
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
615.251.5550 Telephone
615.251-5551 Facsimile
taustin@fbtlaw.com
jmackler@fbtlaw.com
ccampbell@fbtlaw.com

*Counsel for Plaintiff Sherrilyn Kenyon*

---

[18]  As will be shown during discovery, confusion exists to this day in the marketplace between "Shadowhunters" books and "Dark-Hunter" books.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of July, 2016, the foregoing was filed electronically and served upon all registered users of the Electronic Case Filing System, including:

> John R. Cahill, Esq.
> Ron Adelman, Esq.
> CAHILL PARTNERS LLP
> 70 West 40th Street
> New York, NY 10018
> jcahill@CahillLawFirm.com
> radelman@CahillLawFirm.com
>
> Stephen J. Zralek, Esq.
> BONE McALLESTER NORTON PLLC
> 511 Union Street, Suite 1600
> Nashville, TN 37219
> szralek@bonelaw.com
>
> Samuel F. Miller
> Maia T. Woodhouse
> BAKER, DONELSON, BEARMAN, CALDWELL
>   & BERKOWITZ, P.C.
> 211 Commerce Street, Suite 800
> Nashville, TN 37201
> smiller@bakerdonelson.com
> mwoodhouse@bakerdonelson.com
>
> *Counsel for Defendant Cassandra Clare*

s/ William L. Campbell, Jr.

0132504.0632346   4844-8965-6116v1

25