UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERRILYN KENYON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:16-cv-00191 |
| | ) JUDGE CRENSHAW |
| CASSANDRA CLARE and DOES 1 THROUGH 50, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Sherrilyn Kenyon brought this action against Cassandra Clare and Does 1 through 50, alleging multiple federal copyright violations arising from Clare's books, the "Shadowhunter Series." (Doc. No. 30.) Before the Court is Clare's Motion to Dismiss (Doc. No. 41), arguing that the Court does not have personal jurisdiction over her, and even if it did, Kenyon's claims are time-barred. For the following reasons, Clare's motion is **GRANTED IN PART and DENIED IN PART**.

I.  ALLEGATIONS

Beginning in 1998, Kenyon published the "Dark-Hunter Series," a series of books, short stories, and other original material. (Doc. No. 30 at 1.) Kenyon owns the trademark rights to certain marks, such as "Dark-Hunter," "Dream-Hunter," and "Were-Hunter." (Id. at 4.) In or around 2000, Kenyon registered and began using the website domain name "dark-hunter.com" to promote her Dark-Hunter Series and provide additional content regarding the Dark-Hunter world. (Id. at 5.) Kenyon also produced several television commercials and videos, broadcast on major television networks and streaming sites, including "darkhunter.tv." (Id.) There is also a variety of Dark-

Hunter merchandise, such as a line of Ashton-Drake collectible dolls, clothing, coloring books, jewelry, and novelty items. (Id. at 6.)

In 2006, Clare began marketing a work that incorporated one of Kenyon's Dark-Hunter trademarks as the name of one of Clare's protagonists. (Id.) Kenyon demanded that Clare remove the term "Darkhunter," and Clare replaced the term with "Shadowhunters." (Id.) Clare and her publishers assured Kenyon that "Shadowhunters" would be used solely for the name of Clare's protagonists and that they would not expand the use of the "Shadowhunters" term or adopt it as a trademark. (Id.) In 2007, Clare published the book, "The Mortal Instruments: City of Bones." (Id.) In 2009, Clare again assured Kenyon that she would not expand her use of the term "Shadowhunters." (Id.)

In late-2008 or early-2009, Clare's publisher printed approximately 100,000 copies of a Shadowhunters book, mistakenly referring to the story's protagonists as "Darkhunters" instead of "Shadowhunters" on the back cover. (Id.) When Kenyon became aware of the mislabeled Shadowhunters books, she demanded that Clare correct the mislabeling, recall the mislabeled books that have been sold, and make an announcement on her website regarding her mislabeling. (Id. at 8-9.) Clare's publisher destroyed some of the mislabeled books, but refused to recall the books already in stores or sold. (Id. at 9.) The non-recalled books were sold across the country, including in Franklin, Tennessee. (Id.) These books led to confusion in the marketplace, where some purchasers thought that Clare was one of Kenyon's pennames. (Id. at 10.) The confusion exists today, where readers searching for one of Kenyon's books may be led to Clare's books in libraries and elsewhere. (Id. at 11.)

Recently, Clare began using the website domain name "shadowhunters.com" to promote her novels, which the website describes as "Cassandra Clare's Shadowhunters." (Id. at 7.) Clare

wrote a motion picture called "Mortal Instruments: City of Bones," which was released in 2013. (Id.) This motion picture was primarily promoted and discussed through the use of the term "Shadowhunters." Clare also wrote a television series, titled "Shadowhunters: The Mortal Instruments," which was released in 2015. (Id.) This television show is promoted on a website called, "shadowhunterstv.com." Also in 2015, Clare released redesigned book covers that printed the words "A Shadowhunters Novel" along the right side or bottom of the covers. (Id. at 8.)

The confusion is intensified by the similarities between the books. (Id. at 11-12.) Both series are derivative works and are "promoted, discussed, and celebrated in similar online forums and at similar conventions." (Id. at 12.) The books have similar themes and are marketed to similar audiences. (Id.) Both series share a similar origin story. (Id. at 13.) Further, Kenyon uses a creed and tagline that includes the term "shadow," stating: "We are Darkness. We are Shadow. We are Rulers of the Night. We are the Dark-Hunters." (Id.) The visual representations of the Shadowhunters are similar to the visual representations of the Dark-Hunters, including the representations on the book covers, marketing material, graphic novels, website, on the television show and movie, and on marketing materials and merchandise. (Id. at 14.)

II.   PROCEDURAL HISTORY

On February 5, 2016, Kenyon filed the instant Complaint against Clare. (Doc. No. 1.) On February 19, 2016, Clare's attorneys entered a Notice of Appearance, stating that they "enter their appearance as counsel of record for Defendant Cassandra Clare . . . ." (Doc. No. 3.) On February 26, 2016, Clare waived service of the summons on her, but reserved "all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action . . . ." (Doc. No. 12.) On April 8, 2016, the Magistrate Judge issued the Initial Case Management Order, which stated that Clare

wished to contest personal jurisdiction. (Doc. No. 16 at 2.) On April 25, 2016, Clare filed a timely motion to dismiss for lack of personal jurisdiction. (Doc. No. 17.)

### III. STANDARD OF REVIEW

Rule 12(b)(2) allows a defendant to file a motion to dismiss for lack of personal jurisdiction. "In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). Tennessee's long-arm statute, Tennessee Code Annotated § 20-2-214, provides that a Tennessee court may exercise jurisdiction over an out-of-state defendant on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Id. at (6). Accordingly, the long-arm statute has been consistently construed to extend to the limits of federal due process. Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 645 (Tenn. 2009).

For purposes of a motion to dismiss under Rule 12(b)(6), the Court must take all the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

IV.   ANALYSIS

Clare moves to dismiss the Complaint for lack of personal jurisdiction and because Kenyon fails to state a claim upon which she is entitled relief. (Doc. No. 43.)

A.   PERSONAL JURISDICTION

Clare contends that the Court lacks personal jurisdiction over her. (Doc. No. 43 at 12.) Kenyon argues that Clare waived this argument by entering a general Notice of Appearance. (Doc. No. 45 at 2.)

A defendant waives her personal jurisdiction defense if "submissions, appearances and filings . . . give '[the p]laintiff a reasonable expectation that [the defendant] will defend the suit on the merits or . . . cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.'" Means v. United States Conference of Catholic Bishops, --- F.3d ---, 2016 WL 4698275, at *3 (6th Cir. 2016) (quoting Gerber v. Riordan, 649 F.3d 514, 519 (6th Cir. 2011)). When a defendant files a "general appearance with the district court," it constitutes "a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of [the d]efendant['s] personal jurisdiction defense." Gerber, 649 F.3d at 520.

Here, Clare entered a general notice of appearance on February 19, 2016, thereby consenting to the Court's jurisdiction. (Doc. No. 3.) Her arguments that Gerber, by discussing other filings that could consent to a district court's jurisdiction in its dicta, announced a different standard for analyzing waiver does not hold up with the Sixth Circuit's recent decisions. Compare M & C Corp. v. Erwin Behr GmbH & Co., KG, 508 Fed. Appx. 498, 502 (6th Cir. Dec. 17, 2012) ("Rather than finding that the defendants waived personal jurisdiction by participating in the litigation for two and a half years without raising [their personal jurisdiction defense], we instead held that they waived it by virtue of the general appearance.") with Means, -

5

-- F.3d ---, 2016 WL 4698275, at *3 (finding that a defendant did not waive its personal jurisdiction defense by filing a special appearance, rather than a general appearance). Similarly, her argument that the Court's Local Rules require her to file a notice of appearance is not persuasive because they do not specify the form of the notice of appearance, leaving it open whether the defendant wishes to file a special or general appearance. The Court is bound by precedent, and finds that Clare waived her personal jurisdiction defense. As such, the Court does not reach the much closer question of whether it would have personal jurisdiction over Clare had she not waived that defense.

B. FAILURE TO STATE A CLAIM

Clare moves to dismiss the case for failure to state a claim because the trademark claims are time-barred and, as a matter of law, there is no trademark confusion. (Doc. No. 43 at 3.)

1. *Doctrine of Laches*

Clare first moves to dismiss the trademark claims because Lanham Act cases are governed by a three-year doctrine of laches. (Doc. No. 43 at 17-18.) She claims that Kenyon learned about the alleged-infringement in 2006 and unreasonably delayed bringing this action. (Id. at 18.) She further contends that she has been prejudiced by this delay. (Id. at 20.) Clare argues that the doctrine of laches is necessarily an intensive fact-based inquiry that is not appropriate to analyze on a motion to dismiss. (Doc. No. 45 at 19-20.)

When deciding whether a suit is time-barred under the doctrine of laches, a court should consider "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay." Audi AG v. D'Amato, 469 F.3d 534, 545-46 (6th Cir. 2006) (quoting Kellogg Co. v. Exxon Corp., 209 F.3d 562, 569 (6th Cir. 2000)). "Unlike statutes of limitations, 'laches is not . . . a mere matter of time; but

principally a question of the inequity of permitting the claim to be enforced.'" Ford Motor Co. v. Catalanotte, 342 F.3d 543, 550 (6th Cir. 2003) (quoting Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946)). The doctrine of laches is an affirmative defense that the defendant must prove. D'Amato, 469 F.3d at 546. "Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." Pfeil v. State Street Bank & Trust Co., 671 F.3d 585, 599 (6th Cir. 2012) (citing Hecker v. Deere & Co., 556 F.3d 575, 588 (6th Cir. 2009)) (overruled on other grounds).

Here, as there is no evidence in the record, the Court cannot dismiss the case on the doctrine of laches. See Fed. Exp. Corp. v. U.S. Postal Serv., 75 F. Supp. 2d 807, 814 (W.D. Tenn.) ("As evaluation of a claim of laches is dependent upon the submission of evidence, Federal Rule of Civil Procedure 12(b)(6) is not the proper vehicle for bringing such a request."). While there is certainly delay, Kenyon has not had the opportunity to present evidence regarding the reasonableness of the delay, and Clare has not presented evidence of prejudice.[1] The motion to dismiss on this ground is denied.

*2. Confusion*

Clare contends that, as a matter of law, there is no confusion between the marks because the proper author's name is on the cover of her books. (Doc. No. 43 at 21.) She further contends that Kenyon cannot hold a "trademark monopoly" on the word "hunter" in the supernatural creative works context. (Id. at 22.) Third, she contends that "Shadowhunters" and "Dark-Hunters," as a matter of law, are not confusingly similar. (Id. at 23.) Kenyon again contends that the issue of confusion involves matters outside the pleadings, which is not proper on a motion to dismiss. (Doc. No. 45 at 21.)

---

[1] Clare argues that the prejudice is "obvious." (Doc. No. 43 at 20.) However, as this is an affirmative defense, Kenyon is entitled the opportunity to present evidence on the issue of prejudice.

7

In assessing the likelihood of confusion, the Court considers eight non-exhaustive factors: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) the likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) the likelihood of expansion of the products line. General Motors Corp. v. Keystone Automotive Industries, Inc., 453 F.3d 351, 354 (6th Cir. 2006) (citing Tumblebus Inc. v. Cranmer, 399 F.3d 754, 764 (6th Cir. 2005)). The Court only must balance the relevant factors in each case when evaluating likelihood of confusion, "not all of them are necessarily helpful in any given case." Id. at 355 (citing Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997)).

The fact that each author's name is on the book is not dispositive of the likelihood of confusion analysis. While there can be no likelihood of confusion at the point-of-sale "where a defendant conspicuously and unequivocally informs buyers that the defendant, and not the plaintiff, is the source of the product," the likelihood of confusion inquiry extends beyond the point of sale. Id. Clare does not evaluate downstream likelihood of confusion, id. at 356, so the Court declines to grant the motion to dismiss on this ground. Further, Kenyon's claims go beyond just the books—they encompass Clare's television shows, movie, and merchandise. The likelihood of confusion regarding these items are not discussed, and there is insufficient evidence for the Court to evaluate these claims. The Court denies the motion to dismiss on this ground.

There is no evidence in the record for the Court to evaluate Clare's second claim that Kenyon is seeking a "trademark monopoly" for any word in the field of supernatural creative works including the suffix "hunter." Clare cites a case from the United States District Court for the Western District of Arkansas that held, after a bench trial that the word "hunter" in the animal hunting context is descriptive and has not acquired a secondary meaning. Arkansas Trophy

8

Hunters Ass'n v. Texas Trophy Hunters Ass'n, Ltd., 506 F. Supp. 2d 277, 281-82 (W.D. Ark. 2007). Clare argues that Kenyon did not allege that "hunter" has acquired a secondary meaning, but that is the crux of the Complaint. With all reasonable inferences in Kenyon's favor, the motion to dismiss on this ground is denied.

Clare's argument that the words "Shadowhunters" and "Dark-Hunters" are not confusingly similar as a matter of law is not dispositive at the motion to dismiss stage. The case upon she relies, AutoZone, Inc. v. Tandy Corp., 737 F.3d 786 (6th Cir. 2004), analyzed multiple facts placed in the record on a motion for summary judgment in order to determine that the marks were not confusingly similar. Here, the Court has no evidence. Instead, the only allegations are that consumers have confused the marks, which weighs in favor of finding confusion. The motion to dismiss on this ground is also denied.

### 3. False Advertising/Unfair Competition

Clare asserts, without any analysis, that Kenyon's false advertising/unfair competition claims should be dismissed because they rely on the same facts as the trademark infringement. See McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). As Clare offers no analysis, the Court denies the motion to dismiss on this ground.

### 4. Contributory Infringement

Clare argues that the contributory infringement claim should be dismissed because Kenyon has failed to join necessary parties for the Court to grant her the relief requested. Kenyon alleges that "Clare contributed as a writer, via contract and potentially otherwise to the use of 'Shadowhunters' by others—including those parties involved in the infringement found in the

9

Shadowhunters [television] show and motion picture—which Kenyon alleges constitutes infringement of her marks." (Doc. No. 45 at 18.) Clare does not respond to this argument in her reply brief (Doc. No. 57), so the motion to dismiss this claim is denied.

    5. *Common Law Unfair Competition*

Clare argues that an unfair competition claim under Tennessee law has a one-year statute of limitations, and Clare's allegations of actual confusion are beyond one year. (Doc. No. 43 at 25.) Kenyon does not respond to this argument. (Doc. No. 45.) The Court finds that the one year statute of limitations is applicable to this claim, under Tennessee Code Annotated § 47-18-110, and dismisses Kenyon's unfair competition claim as time-barred.

    V.    CONCLUSION

For the foregoing reasons, Clare's motion to dismiss (Doc. No. 41) is **GRANTED IN PART** with respect to Kenyon's unfair competition claim, and **DENIED IN PART** in all other respects. In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), Clare shall file a responsive pleading within fourteen days of the date of this Order.

    IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE