IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERRILYN KENYON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:16-cv-0191 |
| ) | Judge Crenshaw |
| CASSANDRA CLARE, a/k/a JUDITH ) | Magistrate Judge Frensley |
| RUMELT, a/k/a JUDITH LEWIS, ) | |
| ) | |
| and ) | |
| ) | |
| DOES 1 through 50, inclusive, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

### I. INTRODUCTION

The discovery responses and production served by Defendant Cassandra Clare ("Defendant") are inadequate for several reasons. First, many of the documents in the small production served upon Plaintiff Sherrilyn Kenyon ("Plaintiff") were heavily redacted without providing a redaction log or any explanation for the redactions beyond Defendant's contention that the redacted data is not relevant. Second, based on unilateral determinations regarding relevancy, Defendant has refused to produce documents that Plaintiff believes are within Defendant's possession, custody and control. Third, Defendant's responses to certain interrogatories fail to comply with Rule 33, and omit details that are plainly discoverable. Fourth, Defendant has refused to produce documents that she claims are solely in the possession of non-parties, but has failed to identify those non-parties or obtain the responsive documents from those non-parties.

Plaintiff has given Defendant an opportunity to correct these issues, which Defendant has failed to do. Accordingly, for the reasons set forth in the Joint Statement of Issues and in this

Memorandum, the Court should compel Defendant to produce, or authorize the production of, the documents requested, including documents that are in the custody of non-parties, but within her control, and to answer the interrogatories identified below.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action concerns Plaintiff's trademark infringement and unfair competition claims against Defendant. (Pl.'s Am. Compl., Doc. No. 30 ¶ 7). Both Plaintiff and Defendant are authors of successful works of fiction concerning paranormal characters. Plaintiff is the author of a successful series of books known as the "Dark-Hunter Series," through which Plaintiff has developed a worldwide fan base. (*Id*.). Plaintiff's Dark-Hunter Series has become synonymous with certain marks and symbols Plaintiff created and was followed by merchandise, websites, promotional videos, and commercials. (*Id*. ¶¶ 8–14). To protect her intellectual property, Plaintiff registered a family of trademarks that have also acquired secondary meaning as indicative of Plaintiff's works and the associated products. (*Id*. ¶ 8).

Defendant began writing a series of books in or about 2006 that originally included a group of characters known as "Darkhunters." These books included story lines and characters similar to the world created by Plaintiff previously and were marketed to the same readers. (*Id*. ¶ 15). After Plaintiff complained about the similarity of Plaintiff's Dark-Hunter Series to Defendant's use of "Darkhunters," Defendant ultimately agreed to refrain from using the name "Darkhunters." (*Id*. ¶¶ 16–17). Defendant also agreed to transition from the term "Darkhunters" to the substantially similar term "Shadowhunters" and agreed that use of the new "Shadowhunters" term would be limited to the name of her books' protagonists and not be expanded to use for branding or as a mark or brand for Defendant's books series. (*Id*. ¶ 18). Despite that agreement, and the use of the term "Darkhunters" on the cover of a print run of Defendant's books, Defendant ultimately branded her series of books with the "Shadowhunters" term and eventually expanded the umbrella

2

term "Shadowhunters" for use in her other series of books, television, movies, and websites. As a result of Defendant's actions, consumer confusion exists between Plaintiff's "Dark-Hunters" works and Defendant's "Shadowhunters" works. (*Id.* ¶ 39–51).

Based on these facts and others set forth in the Amended Complaint, Plaintiff asserts five causes of action against Defendant: (1) violation of 15 U.S.C. § 1114 (relating to use of "Dark-Hunter" on the cover of books); (2) violation of 15 U.S.C. § 1114 (relating to Shadowhunters books, movie, television show, websites, and merchandize); (3) violation of 15 U.S.C. § 1125 (unfair competition and false designation); and (4) contributory violation of 15 U.S.C. §§ 1114 & 1125.

On April 8, 2016, the Court entered a Case Management Order setting the close of discovery for December 16, 2016. (Doc No. 16).[1] Due to the short time initially allowed for discovery, Plaintiff propounded discovery requests on Defendant and issued subpoenas *duces tecum* to non-parties in May of 2016. (Austin Decl., at ¶ 4). On July 27, 2016, Defendant provided her written responses to Plaintiff's first set of discovery requests. (*Id.* at ¶ 5; **Exh. 1**). On August 26, 2016, Defendant produced 222 pages, approximately 38 of which were redacted and marked confidential pursuant to the parties' confidentiality agreement. (*Id.* at ¶ 6). On September 19, 2016, counsel for Plaintiff sent a letter pursuant to Federal Rule of Civil Procedure ("Rule") 37 ("Rule 37 Letter"), asking Defendant to fully respond to deficient discovery requests. (Declaration of Tonya J. Austin, Esq. ("Austin Decl." at ¶ 7, **Exh. 2**).[2] On October 11, 2016, counsel for Defendant responded to the Plaintiff's Rule 37 letter ("Response Letter"). (*Id.* at ¶ 8, **Exh. 3**). As part of her response to Plaintiff's Rule 37 Letter, Defendant also supplemented her production with

---

[1] The Court subsequently entered an amended Case Management Order extending the discovery deadline to February 17, 2017. (Doc. No. 63).

[2] The Declaration of Tonya J. Austin, Esq. is being filed contemporaneously with this Motion.

140 additional pages, most of which consisted of contract documents. (*Id*.). Defendant also promised to produce documents responsive to Request Nos. 29 – 35, which have not been received. (*Id.*). Because Defendant's production was still deficient, Plaintiff then replied to Defendant's Response Letter on October 26, 2016 ("Reply Letter"), addressing her remaining concerns with Defendant's discovery responses and document production, and asking for a response by November 1, 2016. (*Id.* at ¶ 9, **Exh. 4**). When Defendant did not respond by November 8, 2016, Plaintiff sent Defendant a draft of the Joint Statement. (*Id*. at ¶ 10). Defendant provided her responses for the Joint Statement on November 23, 2016, to which she added a dispute regarding Plaintiff's responses to interrogatories. (*Id*. at ¶ 11). Plaintiff provided her responses for the Joint Statement on December 2, 2016, and this motion followed. (*Id*. at ¶ 12).

While Plaintiff attempted to obtain complete discovery responses from Defendant, Plaintiff also continued her efforts to obtain complete responses to the subpoenas issued in May 2016. After substantial delay, which was fueled in part by Defendant's efforts to stay discovery, Plaintiff was forced to file a motion in the Southern District of New York compelling compliance by Simon & Schuster, Inc., which she won. (*Id*. at ¶ 14); *see Kenyon v. Clare*, Misc. Case No. 1:16-mc-00327, Doc. No. 18). Plaintiff was also preparing to file a similar motion against Constantin Film Development, Inc. in California, when Constantin agreed to provide a limited production of documents to avoid Plaintiff's forthcoming motion. (*Id*. at ¶ 15). However, Constantin refused to produce certain documents due to relevancy objections raised by Defendant's counsel via e-mail. (*Id*. at ¶ 16). In the hopes of avoiding a second, expensive motion to compel, and because Plaintiff had already addressed the relevancy of the requested documents in her Rule 37 Letter to Defendant, Plaintiff agreed to accept the limited production from Constantin without waiver of her other

4

outstanding requests to Constantin. Plaintiff is also engaged in negotiations with ABC, Inc. regarding similar requests for production of documents. (*Id*. at ¶ 17).

Defendant's informal interference with non-party discovery is extremely important in light of her responses to Plaintiff's discovery requests. In her written responses, Defendant has taken the position that she does not have responsive documents in her possession for many categories of documents because, as she claims, they are in the possession of non-parties. While Defendant does not specify, Plaintiff presumes at least two of the non-parties are Simon & Schuster and Constantin. As such, the disputes raised in this Motion relate to documents that Defendant has refused to produce based on unilateral determinations regarding relevancy, as well as documents that Defendant is refusing to collect and produce, or is informally preventing non-parties from producing. For the second category of documents, Plaintiff seeks the Court's determination that such documents are properly discoverable and seeks an order compelling Defendant to either obtain the responsive documents from the non-parties – which she has the legal and actual ability to do – or to authorize the non-parties to fully respond to the pending discovery requests.

### III. ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). "While the scope of discovery is usually quite broad, the test is whether the materials sought are 'reasonably calculated to lead to the discovery of admissible evidence.'" *Tartt v. Wilson County, Tenn.*, 2013 WL 172912, *2 (M.D. Tenn. Jan. 16, 2013) (citing Fed. R. Civ. P. 26(b)(1)).[3] "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made

---
[3] True and accurate copies of all referenced unreported and out-of-jurisdiction case law is attached hereto.

if: . . . (iv) a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34." Fed. R. Civ. P. 37(a).

"[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 891 (M.D. Tenn. 2010) (quoting *Conti v. Am. Axle & Mfg.*, 326 Fed. Appx. 900, 904 (6th Cir. 2009). Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.* As Rule 26 states: "information need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Plaintiff's discovery seeks documents that support her federal trademark infringement and unfair competition claims against Defendant.[4] Many documents in Defendant's meager production include impermissible, heavy redactions. Additionally, Defendant has refused to answer fully the Requests for Production, as well as certain of Plaintiff's interrogatories.

A. **DEFENDANT HAS REFUSED TO PRODUCE RESPONSIVE DOCUMENTS WITHOUT IMPERMISSIBLE REDACTIONS.**

Defendant produced 362 pages, approximately 38 of which were redacted, many of which had redactions covering nearly all of the content on the page. Defendant has confirmed that these redactions were made to exclude information that Defendant determined to be "irrelevant" to the Plaintiff's claims.

Defendant's redactions of purportedly "irrelevant" information are impermissible under the Rules. In *Beverage Distributors, Inc. v. Miller Brewing Co.*, 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010), the Southern District of Ohio ordered the defendants to produce un-redacted

---

[4] The Court decided Defendant's Motion to Dismiss on November 29, 2016 (Doc. No. 64), dismissing only Plaintiff's common law claim for unfair competition.

versions of the documents previously produced with large portions redacted based on unilateral determinations of relevancy. *Id.* at *1, 3. In that case, the defendants argued that their redaction of "irrelevant" information was proper. *Id.* at *4. In doing so, the defendants relied on *Spano v. Boeing, Co.*, 2008 WL 1774460, at *2 (S.D. Ill. Apr. 16, 2008), which cited *Beauchem v. Rockford Products Corp.*, 2002 WL 1870050 (N.D. Ill. Aug. 13, 2002) and *Schiller v. City of New York*, 2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006) – notably, the same case law cited by Defendant her in Joint Statement (p. 3). The plaintiffs in that case, however, argued that the redactions were not allowed under the Rules (*citing Orion Power Midwest, L.P. v. America Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008) (holding that redaction is not allowed under Rule 34). *Id.* The court reconciled both lines of cases by noting several common themes pervading each opinion:

> (1) that redaction of otherwise discoverable documents is the exception rather than the rule; (2) that ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case; and (3) that the Court should not be burdened with an *in camera* inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege.

*Id.* The court stated that the redactions were approved in *Spano*, *Beauchem* and *Schiller* because "the number of redacted documents appeared to be small, and the content of the redactions *was readily apparent*." *Id.* at *5 (emphasis added). The court did not apply the holdings from *Spano, Beauchem* and *Schiller* because (1) it would be impossible to divide the redactions into a few discrete categories about which relevancy arguments could conveniently and intelligently be made, (2) conducting *in camera* review of each disputed redaction would be unnecessarily burdensome and time-consuming, and (3) the defendants failed to prepare any type of log which would provide the type of information the defendants deemed irrelevant, and why. *Id.* For those reasons, the

court disapproved the manner in which the defendants redacted the documents and granted the plaintiffs' motion to compel. *Id.*

Here, Plaintiff is unable to determine the content of the redacted content, which, in some instances even excludes numbered items in a list where the author of the e-mail is providing a summary of a single meeting. In the Joint Statement, Defendant attempts to legitimize the redactions by asserting that many are "private conversations between friends." (Joint Statement, p. 3). However, even if this assertion sufficiently excused the redactions (which it does not), it does nothing to explain the redactions from communications between Defendant and her representatives and other business professionals. Moreover, as set forth in detail below, the parties clearly disagree on what information is discoverable in this lawsuit. Given that Defendant has one body of work – the Shadowhunter Series – all of which is at issue in this lawsuit, it is difficult to imagine how relevant and non-relevant topics could be discussed among her team of professionals (agents, publishers, co-authors, etc.) without having some relevance to the present lawsuit. As such, Defendant should not be permitted to unilaterally determine that information presented in a responsive document is not relevant and can, therefore, be withheld. Importantly, Defendant has already marked the documents "confidential" pursuant to the Confidentiality Agreement entered by this Court. Thus, to the extent Defendant is concerned about disclosure outside of this lawsuit of other information, the content will already be protected by the confidential designation placed on the documents. Plaintiff requests that the documents be produced without the redactions.

**B.     DEFENDANT HAS REFUSED TO RESPOND TO CERTAIN DISCOVERY REQUESTS BASED ON RELEVANCY OBJECTIONS.**

As noted above, Defendant has withheld unspecified documentation based on her unilateral determination that such documents are not relevant. The discovery requests at issue are all in proportion with the needs of the case, and Defendant should be required to produce the responsive

8

documents. For certain requests, Defendant objected on relevancy, but also stated that responsive documents would all be in the custody and control of non-parties. Plaintiff will address the issue of non-party documentation in the Section III(C), below.

> **1.    Request Nos. 18 and 19 - Documents and communications regarding character names and the visual representation of Defendant's characters.**

These Requests collectively seek documents and communications regarding the character names as well as the visual representation and depictions of such characters on book covers and promotional materials, as well as the design of the book covers and promotional materials, from 2006 through the present.

Defendant has taken the position that the documents sought by these Requests are wholly irrelevant to Plaintiff's trademark and unfair competition claims because they relate to the "content" of Defendant's work. Defendant has further asserted that the somewhat responsive documents that were produced by Defendant[5] were produced as evidence of using Shadowhunters as a brand (Request No. 21), not in response to Request Nos. 18 and 19.

Contrary to Defendant's position, the documents sought by Request Nos. 18 and 19 are highly relevant to Plaintiff's trademark infringement and unfair competition claims, both of which look at several factors to determine whether there is likelihood of confusion. "Similarity between marks and the goods marketed usually merits a presumption of a 'likelihood of confusion.'" *Schneider Saddlery Co., Inc. v. Best Shot Pet Products Intern., LLC,* 2009 WL 864072, at *10

---

[5] Defendant's production only included one e-mail between Defendant and her husband answering FAQs where she briefly explained the origin of character names. The production also includes e-mails regarding the redesign of the Clockwork Princess cover, as well as drafts of the re-branded covers created in 2015. However, the production included no documents or communications regarding the development of the initial visual representations of the characters from "The Mortal Instruments: City of Bones" or any other cover art or promotional material. The production also omitted any author questionnaires completed by Defendant for use by Simon & Schuster in developing the visual representation of her works and characters.

(N.D. Ohio March 31, 2009) (quoting *First Am. Mktg. Corp. v. Canella*, 2004 U.S. Dist. LEXIS 2251, at *16 (E.D Pa. Jan. 26, 2004).  Because the "goods" being marketed here are the literary works of Plaintiff and Defendant, as well as the videos based on those works, the similarities between the works are relevant to Plaintiff's claims.  In particular, because the marks at issue are essentially synonymous, similarities between character names and the visual representations of the characters – all used in the marketing of those works – are relevant to the analysis of likelihood of confusion between the marks marketing the respective "goods".

Additionally, documents and information regarding Defendant's decision to select the particular character names is equally relevant, as this evidence goes to Defendant's intent.  The "intent of defendant[] in adopting ([her] mark) is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity." *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 662 (E.D. Mich. 2005), *aff'd*, 469 F.3d 534 (6th Cir. 2006) (internal quotation marks omitted).  Indeed, "[i]ntent is relevant because, if a party intended to infringe, a fact-finder may well assume that the party was successful in doing so."  *Schneider Saddlery Co., Inc.*, 2009 WL 864072 at *13.  Thus, the source of Defendant's character names, especially unique and unusual names that appeared in Plaintiff's works prior to the publication of Defendant's works, as well as any visual materials consulted in creating the look of the characters on book covers and promotional materials bears directly on the *intent* of Defendant.  As alleged in the Amended Complaint, Defendant knew of Plaintiff's trademarks, the content of Plaintiff's works, and the context in which Plaintiff's marks appear in her works and promotional materials, including online book trailers.

Accordingly, any information regarding Defendant's decision to depict her characters in a way that creates a likelihood of confusion with Plaintiff's works is relevant to Plaintiff's trademark infringement and unfair competition claims. The Court, therefore, should find that the requested information is discoverable, and order Defendant to produce all responsive documentation.

### 2. Request No. 22 - Documents and Communications Regarding Commercial Use of the Angelic Rune.

This Request seeks documents and communications regarding the commercial use (including by license) of Defendant's symbol known as the Angelic Rune. Plaintiff has alleged that the Angelic Rune is "essentially a simplified version of a symbol created by Plaintiff" and used in her Dark-Hunter derivative series, Dream-Hunter, which predated the Shadowhunters Series by Defendant. (Amended Complaint, ¶ 50). Documents and information relating to the Angelic Rune are, therefore, relevant to Plaintiff's claims. These documents would demonstrate yet another similarity between the "goods" marketed by the confusingly similar trademarks "Dark-Hunter" and "Shadowhunter." *See Schneider Saddlery Co., Inc.*, 2009 WL 864072 at *10 (*supra*). Moreover, responsive documents would reveal Defendant's intent in adopting the symbol as part of her brand, which is also relevant to Plaintiff's claim. *See The Learning Internet v. Learn.com, Inc.*, 2009 WL 6059550, at *26 (D. Or. 2009). Accordingly, the Court should find that the requested information is discoverable, and order Defendant to produce all responsive documentation.

### 3. Requests Nos. 23, 24, 25, and 26 - Documents and Communications Regarding the Motion Picture and Shadowhunters TV Show.

Collectively, these Requests seek documents and communications regarding the writing, branding and naming of the Motion Picture and the Shadowhunters TV Show. These requests do

not seek copies of, or drafts of, the actual script for the show, but instead seek documentation and information regarding the source for the title, branding and visual representations of the set and characters. Defendant's production includes e-mail between Defendant and her agent discussing meetings regarding the television series, as well as discussions regarding Simon & Schuster suggesting she call the show "Shadowhunters" as part of Defendant's goal to rebrand her works under the "Shadowhunters" umbrella. However, while Defendant has produced limited documentation relating to the naming and branding of the show, Defendant insists that any further documentation is irrelevant to Plaintiff's claims.

As with the requests above, the requested documents would demonstrate similarities between the "goods" marketed by the confusingly similar trademarks "Dark-Hunter" and "Shadowhunter." *See Schneider Saddlery Co., Inc.,* 2009 WL 864072 at *10 (*supra*). Moreover, such documents could reveal Defendant's intent in selecting to design and cast the Motion Picture and Shadowhunters TV Show in a way to that makes it confusingly similar to the pre-existing visual representations of Defendant's Dark-Hunter Videos, as well as her intent in branding and marketing the Motion Picture and Shadowhunters TV Show as has done so. As explained above, this documentation and information is relevant to the factors the Court will consider in deciding Plaintiff's trademark infringement and unfair competition claims. *See e.g., The Learning Internet*, 2009 WL 6059550 at *26. Accordingly, the Court should find that the requested information is discoverable, and order Defendant to produce all responsive documentation.

    **4.    Interrogatory No. 7 - Identity and Contact Information for Key Individuals Assisting Defendant.**

This Interrogatory seeks the name and contact information for each editor, critique partner, brain-storming partner, reader and/or assistant Defendant has worked with since 2005. Defendant

12
Case 3:16-cv-00191   Document 67   Filed 12/05/16   Page 12 of 19 PageID #: 1110

has wholly refused to provide information responsive to Interrogatory No. 7, claiming instead that this Request is merely directed at Defendant's "creative process." Defendant is incorrect. The individuals who fall into the categories identified in Interrogatory No. 7 took part in Defendant's process of creating the Shadowhunter Series (essentially, the "goods" being marketed with the infringing trademark at issue in this matter), and therefore may have relevant knowledge and information regarding the claims in this lawsuit, in particular, knowledge and information that goes towards the elements of likelihood of confusion. For example, these individuals may have information regarding the selection of the name "Shadowhunters," the origin of the character names that also exist in the Dark-Hunter Series, the origin of the visual representations of the characters in Defendant's books, the strategy for marketing and positioning Defendant's novels in certain genres, and the intent behind the same. (*See* "Plaintiff's Position" regarding Request No. 18, *supra*). As such, the intent of this Interrogatory is not to discover Defendant's creative process, but is to determine who might have additional information regarding the factors that are relevant to Plaintiff's claims. As such, Defendant should be forced to provide a complete answer to Interrogatory No. 7.

     **5.    Interrogatory No. 8 - Listing of Relevant Conventions Attended by Defendant.**

This Interrogatory seeks a listing of all comic or science fiction/fantasy conventions attended by Defendant since 2002. In the Joint Statement, Defendant attempts to down-play the significance of this information by stating that she has conceded she was aware of Plaintiff's mark in 2006. Thus, information regarding her travel would not be relevant. (Joint Statement, pp. 13-14). This information is relevant because it involves Defendant's access to certain information about Plaintiff and her Dark-Hunter Series at key points in time. Plaintiff was marketing her Dark-Hunter Series – including the Jaden Symbol, which Plaintiff claims predated and is
13

Case 3:16-cv-00191 Document 67 Filed 12/05/16 Page 13 of 19 PageID #: 1111


has wholly refused to provide information responsive to Interrogatory No. 7, claiming instead that this Request is merely directed at Defendant's "creative process." Defendant is incorrect. The individuals who fall into the categories identified in Interrogatory No. 7 took part in Defendant's process of creating the Shadowhunter Series (essentially, the "goods" being marketed with the infringing trademark at issue in this matter), and therefore may have relevant knowledge and information regarding the claims in this lawsuit, in particular, knowledge and information that goes towards the elements of likelihood of confusion. For example, these individuals may have information regarding the selection of the name "Shadowhunters," the origin of the character names that also exist in the Dark-Hunter Series, the origin of the visual representations of the characters in Defendant's books, the strategy for marketing and positioning Defendant's novels in certain genres, and the intent behind the same. (*See* "Plaintiff's Position" regarding Request No. 18, *supra*). As such, the intent of this Interrogatory is not to discover Defendant's creative process, but is to determine who might have additional information regarding the factors that are relevant to Plaintiff's claims. As such, Defendant should be forced to provide a complete answer to Interrogatory No. 7.

     **5.    Interrogatory No. 8 - Listing of Relevant Conventions Attended by Defendant.**

This Interrogatory seeks a listing of all comic or science fiction/fantasy conventions attended by Defendant since 2002. In the Joint Statement, Defendant attempts to down-play the significance of this information by stating that she has conceded she was aware of Plaintiff's mark in 2006. Thus, information regarding her travel would not be relevant. (Joint Statement, pp. 13-14). This information is relevant because it involves Defendant's access to certain information about Plaintiff and her Dark-Hunter Series at key points in time. Plaintiff was marketing her Dark-Hunter Series – including the Jaden Symbol, which Plaintiff claims predated and is

13

Case 3:16-cv-00191   Document 67   Filed 12/05/16   Page 13 of 19 PageID #: 1111

confusingly similar to Defendant's subsequent Angelic Rune – at comic and science fiction/fantasy conventions prior to Defendant's publication of any novel in the Shadowhunter Series. "When the alleged infringer knowingly adopts a mark similar to another's mark, the court will presume the public will be deceived." *The Learning Internet*, 2009 WL 6059550 at *26; *see also Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109, 1111 (9th Cir. 2002) ("Adopting a designation with knowledge of its trademark status permits a presumption of intent to deceive.... In turn, intent to deceive is strong evidence of a likelihood of confusion."). Defendant's access and exposure to Plaintiff's works, as well as the presentation and promotion of Plaintiff's works *at specific points in time*, is relevant to the elements of Plaintiff's trademark infringement and unfair competition claims.

### C. DEFENDANT HAS REFUSED TO PRODUCE DOCUMENTS IN HER CONTROL THAT ARE IN THE CUSTODY OF NON-PARTIES.

As explained above, Defendant has taken the position that she is unable to provide responsive documents and information because it is not in her custody. Similarly, for other categories of documents, Defendant has asserted that she has produced all responsive documents in her possession, but has not confirmed that no additional responsive documents exist. Defendant cannot avoid her discovery obligations by hiding behind her own failure to retain copies of important documents regarding her works.

Rule 34(a) allows a party to ask for, and requires a party to produce for inspection and copying, documents within the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a). Courts throughout the country, including within the Sixth Circuit, have ordered parties to obtain documents from non-parties pursuant to Rule 34. *See e.g., Libertarian Party of Ohio v. Husted*, 2014 WL 3928293, at *1 (S.D. Ohio 2014). For Rule 34 purposes, courts find the general principals about when a client has "control" of a document in the possession of a non-party are

"fairly straightforward."  *Id.*  "Control" is defined as "the legal right or ability to obtain the documents from another source upon demand..." *Id.* (*quoting Mercy Catholic Medical Center v. Thompson,* 380 F.3d 142, 160 (3d Cir. 2004).  Neither physical possession nor legal ownership of the documents is required.  *Id.*  "Courts have also 'interpreted Rule 34 to require production if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement.'" *Id.* (*quoting In re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493, 530 (S.D.N.Y. 1996) and *Golden Trade S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y. 1992)).  Further, "[t]he term control in the context of discovery is to be broadly construed." *Id.* (*quoting New York ex rel. Boardman v. National R.R. Passenger Corp.,* 233 F.R.D. 259, 268 (N.D.N.Y. 2006)).

Given the relationships between Defendant and the non-parties that presumably are in possession of the requested responsive documents, it is evident that Defendant has the legal right, or at least ability, to request copies of the responsive documents.  Importantly, Plaintiff has tried to obtain certain of these documents directly from non-parties, only to be delayed or entirely stopped by information relevancy objections presented by Defendant's counsel via e-mail.  (Austin Decl. at ¶ 15).  Defendant's ability to intervene and prevent production of responsive documents indisputably demonstrates her control.  As such, Plaintiff requests that the Court order Defendant to obtain all additional responsive documents from the non-parties in possession and produce those to Plaintiff pursuant to Rule 34, or, in the alternative authorize production of the responsive documents.  The specific instances where Plaintiff requests the Court's intervention are outlined below.

### 1. Requests Nos. 23, 24, 25, and 26 - Documents and Communications Regarding the Motion Picture and Shadowhunters TV Show.

Defendant has insisted that all documents regarding the "branding" or "naming" of the Motion Picture and Shadowhunters TV Show have been produced. However, this request also seeks documents regarding the casting and set design of the Shadowhunters TV Show. As explained above, these requests do not seek copies of, or drafts of, the actual script for the show, but instead seek documentation and information regarding the source for the title, branding and visual representations of the set and characters. Given the magnitude of the projects referenced in the above Requests, it is reasonable to assume that additional responsive documents exist relating to the casting, set design, naming and branding of the Motion Picture and Shadowhunters TV Show, even if they are not in the hands of Defendant. Because movies and television shows have to be "pitched" to potential producers and studios (and because Defendant has produced e-mails indicating that such pitches did occur for the Shadowhunters TV Show), pitch-related documents should exist. These documents would likely provide examples of how the characters and set should look in the television show. Moreover, documents should exist regarding Defendant's role in developing materials used for such presentations – including her vision for the visual representation of her characters in the proposed television show.

These documents have been requested from Constantin and ABC. Defendant's relevancy objections have either been echoed by counsel for the non-parties or explicitly and improperly asserted via e-mail to prevent production of certain documents. As such, to the extent the responsive documents and communications are solely in the possession of Defendant's agents, including ABC and Constantin, Defendant should not be able to avoid production of such documents by hiding behind her own failure to retain copies. Indeed, Plaintiff has already issued subpoenas to ABC and Constantin, to which Plaintiff encountered substantial resistance. In fact,

even once responsive documents were identified by Constantin, Defendant insisted that Constantin not produce certain documents based on her objections to relevancy (presented via e-mail, as opposed to a motion for a protective order regarding the scope of discovery). Constantin also refused to search for documents regarding the casting, set design and visual representation of the Shadowhunters TV Show primarily based on the Defendant's insistence that such information is not relevant.

As such, Plaintiff respectfully requests that the Court compel Defendant to obtain the responsive documents from the appropriate non-parties and produce those to Plaintiff pursuant to Rule 34.

### 2. Request Nos. 37 - 38 and Interrogatory No. 12 - Documents and Information Regarding Shadowhunters.com and Shadowhunterstv.com.

These Discovery Requests collectively seek documents and information relating to the source code and/or metatags for the websites "shadowhunters.com," and "shadowhunterstv.com". As explained above, any effort by Defendant or her agents to market or position her works in such a way to encourage confusion between her works and Plaintiff's Dark-Hunter Series will factor into the analysis of likelihood of confusion. The content of the website, code, metatags, and the like will go towards the element of intent.

In response to Plaintiff's Rule 37 Letter, Defendant has taken the position that the websites are owned and operated by non-parties (without identifying the parties).[6] Defendant has refused to provide the responsive information for "shadowhunters.com" and "shadowhunterstv.com," citing un-named non-parties as the owners and operators of such websites. Based on prior

---

[6] Confidential documents previously produced by Defendant indicate that Defendant (at least initially) insisted that the domain name "Shadowhunters.com" must be owned by her, not Simon & Schuster.

communications regarding discovery in this matter, Plaintiff presumes the non-party owner/operators to be Simon & Schuster and ABC, respectively.

Plaintiff has issued subpoenas to both Simon & Schuster and ABC seeking documentation relevant to the lawsuit. Plaintiff obtained an order compelling Simon & Schuster to comply with the subpoena issued to it, but Plaintiff is still in negotiations with ABC. As such, to the extent these non-parties refuse to provide the requested information to Plaintiff, Plaintiff seeks an order from the Court ordering Defendant to authorize Simon & Schuster and ABC, respectively, to provide the requested documentation and information. Alternatively, Plaintiff requests that Defendant be ordered to obtain and produce such documents on her own.

## IV. CONCLUSION.

For the reasons outlined above and in the Joint Statement, Defendant should be compelled to (1) produce unredacted versions of the responsive documents; (2) produce all responsive documents in her custody; (3) fully respond to appropriate interrogatories; and (4) either authorize the production of, or obtain and produce all documents in possession of non-parties that are in her control. As such, Plaintiff requests that this Court grant her Motion to Compel.

Respectfully submitted,

s/ Tonya J. Austin
William L. Campbell, Jr. (BPR 022712)
Tonya J. Austin (BPR 033771)
FROST BROWN TODD LLC
150 3rd Avenue South, Suite 1900
Nashville, Tennessee 37201
615.251.5550 Telephone
615.251-5551 Facsimile
ccampbell@fbtlaw.com
taustin@fbtlaw.com

*Counsel for Plaintiff Sherrilyn Kenyon*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of December, 2016, the foregoing was filed electronically and served upon all registered users of the Electronic Case Filing System, including:

John R. Cahill, Esq.
Ron Adelman, Esq.
CAHILL PARTNERS LLP
70 West 40th Street
New York, NY  10018
jcahill@CahillLawFirm.com
radelman@CahillLawFirm.com

Samuel F. Miller
Maia T. Woodhouse
BAKER, DONELSON, BEARMAN, CALDWELL
  & BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, TN  37201
smiller@bakerdonelson.com
mwoodhouse@bakerdonelson.com

*Counsel for Defendant Cassandra Clare*

s/ Tonya J. Austin

0132504.0632346   4833-0415-2125v2

19
Case 3:16-cv-00191   Document 67   Filed 12/05/16   Page 19 of 19 PageID #: 1117